634 P.2d 988

**STATE of Arizona, Appellee,**

v.

**Elizabeth CURIEL and Rigoberto Curiel, Appellants.**

**Nos. 1 CA–CR 4692, 1 CA–CR 4747.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 25, 1981.

Rehearing Denied Sept. 25, 1981.

Robert K. Corbin, Atty. Gen., by William J. Schafer III, Chief Counsel, Criminal Division, Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Waldo W. Israel, Yuma, for appellant Elizabeth Curiel.

Roberson & Shelley by Jerrold F. Shelley, Yuma, for appellant Rigoberto Curiel.

## OPINION

JACOBSON, Judge.

The major issues presented by this consolidated appeal are whether a plastic cannister falls within the prohibition against warrantless searches afforded luggage and whether a severance of a co-defendant's trial should occur where there exist charges against one defendant that do not exist against another defendant.

Defendants Elizabeth Curiel and Rigoberto Curiel were both charged with possession of heroin for sale with a value greater than $250.00, a class 2 felony, in violation of A.R.S. § 36–1002.01, transportation of heroin having a value greater than $250.00, a class 2 felony, in violation of A.R.S. § 36–1002.02, and unlawfully controlling property of another of a value less than $1000.00, a class 4 felony, in violation of A.R.S. § 13–1802. In addition, defendant Rigoberto Curiel was charged with sale of heroin which took place on August 6, 1979, a class 2 felony in violation of A.R.S. § 36–1002.02. The defendants were tried together and convicted on all counts. The defendants were sentenced to the presumptive terms of seven years imprisonment on each of the drug counts and the presumptive term of one and one-half years imprisonment on the theft count. All sentences were ordered to run concurrently.

On the evening of September 12, 1979, defendant Rigoberto Curiel and his wife, co-defendant Elizabeth Curiel, were stopped in their automobile by Yuma, Arizona police officers. The initial stop of the vehicle was based upon information received from a service station attendant that Rigoberto and another male passenger in the car, Guillermo Clark, fit the description of two suspects in two recent Yuma armed robberies. When the car was stopped, the two police officers approached on opposite sides of the car and asked Rigoberto, the driver, and Mr. Clark, who was seated next to the passenger door in the front seat, to step from the car. Elizabeth, who had been sitting between the two men, was left in the car. As Rigoberto stepped out, the officer on the opposite side of the car recognized him as a suspected drug dealer. Rigoberto began to exhibit anxiety or nervousness and the officer who was questioning him, fearing that he might be carrying a weapon, told him to place his hands on his head so that he could conduct a pat-down search. As the officer stood behind appellant with his left hand on Rigoberto's hands and using his right hand to conduct the pat-down search, Rigoberto stated that he had some candy in his front pocket which he wanted to give to his wife so it would not spill. Although told not to do so by the officer, he jerked his hand from the officer's grasp, reached into his pocket and

withdrew a small plastic cylindrical cannister which he threw toward his wife in the car, stating, "Here's the candy." The officer on the driver's side yelled that Rigoberto had thrown something into the car at which point the officers saw Elizabeth making a quick motion with her hand toward the passenger side of the front seat. The officer on the passenger side opened the door and retrieved the plastic cannister from the seat, showing it to the other officer who confirmed that it was the object thrown. The cannister was opened and found to contain heroin. Thereafter, Rigoberto and Mr. Clark were placed under arrest. The automobile was seized and subsequently, following the issuance of a search warrant, searched. A small packet containing heroin, cotton balls and a lid apparently used for preparing heroin for injection was found in Elizabeth's purse on the front floorboard. Scales and a syringe were found in the glove compartment. In addition, a stolen handgun was found in an overnight-type handbag in the trunk which contained articles owned by both defendants.

Because of the common questions of law and fact, the appeals of Rigoberto and Elizabeth were consolidated for decision although separately briefed. Both Elizabeth and Rigoberto have raised the following issues:

1. Did the trial court err in denying their pre-trial motion to suppress?

2. Was it error for the trial court to deny their motion for mistrial based upon comments by the prosecutor during his opening statement that both defendants refused to supply a urine sample for drug screening purposes?

3. Did the trial court err in admitting testimony of prior drug purchases by an informant when those purchases were not tied to the defendants?

4. Was there sufficient evidence to support the verdicts of theft of the gun?

In addition, appellant Elizabeth has presented the following issues:

5. Did the trial court err in failing to sever the trial of Elizabeth from that of Rigoberto?

6. Did the trial court err in denying the motion to sever the drug counts from the theft count?

7. Was it error to deny the motion for judgment of acquittal on both drug counts as to Elizabeth?

## MOTION TO SUPPRESS

Both defendants argue that the Fourth Amendment prohibition against unlawful searches and seizures was violated in two respects: (1) that the stop of the automobile was unlawful; and (2) that the search of the cannister was unlawful without the officers first obtaining a search warrant.

■ As to the stop of the automobile, the law is clear that the police may make an investigatory stop of an automobile where there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *State v. Jarzab*, 123 Ariz. 308, 599 P.2d 761 (1979), *cert. denied* 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980), and *State v. Eason*, 124 Ariz. 390, 604 P.2d 654 (App. 1979). Here, there were articulable facts warranting the intrusion. The officers had circulated detailed descriptions of suspected armed robbers among evening business employees in the Yuma area, including the service station attendant involved in this case. The attendant saw two men matching that description and relayed the information to the police officers. Under the circumstances, the officers would have been derelict in not stopping the automobile and making a limited field investigation. As to Elizabeth's argument that there was no suspicion of criminal activity on her part, the argument is specious in that the intrusion on her liberty was only incidental to the authorized investigatory stop of Rigoberto and Guillermo Clark. There is no indication in the record that the stop was in any way

arbitrary or harassing and absent such evidence, the trial court's ruling on the motion to suppress will not be overturned. *See State v. Jarzab, supra.*

■ As to the search of the cannister, the defendants argue that once the cannister was taken into possession by the police officers, no exigent circumstances existed to authorize a warrantless search. In making this argument they rely on *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In *Chadwick* and *Sanders* the United States Supreme Court held that the exigent circumstances involved in the automobile exception to the warrant clause do not extend to containers which carry a high expectation of privacy even though the containers may have been lawfully seized as part of an automobile search.

■ In our opinion the officers properly could "search" as well as "seize" the cannister in question. This cannister came to light as a result of a proper search incident to arrest. As *Chadwick* points out:

When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless "search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California,* 395 U.S. at 763, 89 S.Ct. at 2040. See also *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 44 Ohio Ops.2d 383 (1968).

Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved.

433 U.S. at 15–16, 97 S.Ct. at 2485, 53 L.Ed.2d at 550. *See also State v. Belton,* —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

Thus, as *Chadwick* and *Belton* make clear, the search of the cannister was completely proper, not under the exigent circumstances test but rather as a search incident to arrest.[1] The trial court properly admitted the cannister and its contents.

## REFUSAL TO GIVE URINE SAMPLES

■ After the defendants were arrested, the officers noted that both had "track marks" on the insides of their arms indicating use of narcotics. When asked during the booking procedure to give urine samples to test whether they were under the influence of narcotics, both defendants refused. During his opening statements, the prosecuting attorney made reference to these refusals. The defendants objected, claiming that the statement was an improper comment on their Fifth Amendment right to remain silent. Their motion for mistrial was denied and no further reference to the incident was made during the trial.

The refusal to give a blood sample is nontestimonial evidence and therefore comment on the refusal does not violate the Fifth Amendment. *See Schmerber v. State of California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971).

Defendants alternatively rely upon *State v. Asbury,* 124 Ariz. 170, 602 P.2d 838

---

1. Although not raised by the parties, the record contains no claim by Elizabeth of any possessory interest in the cannister or any reasonable expectation of privacy in its contents which would give her standing to contest the lawfull-

ness of its search. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Morrow,* 128 Ariz. 309, 625 P.2d 898 (1981), and *State v. Nalder,* 129 Ariz. 19, 628 P.2d 56 (1981).

(1979), and A.R.S. § 13–3905. *Asbury* dealt with the propriety of the state's comment on the defendant's post-indictment refusal to submit a handwriting sample and pose for a photograph. This was held to violate Rule 15.2(a), Rules of Criminal Procedure, 17 A.R.S., which permits the state, upon proper notice to defense counsel, to obtain a court order requiring the defendant to give such evidence. The court noted that the comment did not violate the Fifth Amendment but violated the intent of the rule which is to assure the right to counsel in such post-indictment proceedings. Rule 15.2 applies only to disclosure of physical evidence "after the filing in Superior Court of an indictment or information" and therefore is not applicable to this case. As noted by the state, the officers could not wait until after the indictment or information had been filed because by then, whatever evidence of drugs may have been in the blood-stream would have dissipated. In addition, A.R.S. § 13–3905 is not helpful. This statute merely permits temporary detention of suspects to obtain physical evidence where there is no probable cause to arrest. Unlike Rule 15.2, there is no right to counsel during this temporary detention and therefore the *Asbury* analogy fails. Thus, the state had the right to present evidence as to the appellants' refusal to submit to blood samples. The fact that no evidence of the refusal was brought out during the trial proceedings is not argued as being prejudicial. The court properly denied the motion for mistrial.

## PRIOR BAD ACTS

The evidence presented in support of the charge against Rigoberto of sale of heroin on August 6, 1979, was presented through the testimony of Officer Torres. At the time of the sale, Officer Torres was working undercover and made the purchase from Rigoberto after being introduced to him by an informant named Debbie. In addition to the testimony of this sale, there was testimony that earlier that day the officer and Debbie had gone to a house on Sixth Avenue in Yuma and Debbie had entered the house and purchased heroin.

When the evidence of the Sixth Avenue sale was first presented, the defendants objected on the ground that it improperly implied prior bad acts on the part of defendants. This objection was overruled upon an avowal by the prosecutor that the residence would be shown to be that of the defendants. This link was never made and the defendants complain that there was an improper, prejudicial inference to prior bad acts.

As a general rule, evidence of such prior bad acts is not admissible because the jury may conclude that the defendant is a "bad person" and convict on lesser evidence than would ordinarily be required. *State v. Babineaux*, 22 Ariz.App. 322, 526 P.2d 1277 (1974). However, where the prior bad acts are relevant to an issue of intent, the evidence is admissible. Rule 404(b), Rules of Evidence 17A, A.R.S. Here, the charge was possession for sale and therefore a prior sale of narcotics was relevant to the issue of possession with intent to sell. *See State v. Price*, 123 Ariz. 166, 598 P.2d 985 (1979). However, such evidence was relevant only with a proper foundation that the sale to Debbie was in fact at the defendant's residence. This link cannot be established by inference. Thus, to the extent the connection was made by inference, it was error. *See State v. Ballantyne*, 128 Ariz. 68, 623 P.2d 857 (App. 1981), and *State v. Urias*, 8 Ariz.App. 319, 446 P.2d 18 (1968). Nevertheless, we do not find that the error was prejudicial error demanding reversal. As was stated in *State v. Brown*, 125 Ariz. 160, 162, 608 P.2d 299, 301 (1980);

Initially, where evidence is erroneously admitted, reversal is required only when it is reasonably probable that, absent the tainted evidence, the jury would have reached a different conclusion.

*See also State v. Cruz*, 128 Ariz. 538, 627 P.2d 689 (S.Ct.No.5109, filed April 6, 1981). Here, assuming the jury inferred that the residence was that of the defendants, it was at most cumulative to the evidence of a sale later that day to the undercover officer and would not have affected the verdicts.

## THEFT OF THE GUN

 Both defendants argue that there was insufficient evidence to support the verdict of theft under A.R.S. § 13–1802 and rely on cases under Arizona's previous theft and burglary statutes which held that possession of recently stolen property was insufficient, standing alone, to support a verdict of theft or burglary.[2] However, these cases are not applicable for two reasons. First, asportation is no longer an element of the crime of theft as all parties agree that the defendants were charged and tried under A.R.S. § 13–1802(A)(5) which provides as follows:

A. A person commits theft if, without lawful authority, such person knowingly:

 * * * * * *

(5) Controls property of another knowing or having reason to know that the property was stolen.

The old theft statute spoke of "taking" another's property whereas the present statute speaks of exercising "control." Thus, under A.R.S. § 13–1802(A)(5), the "carrying away" is no longer an element of theft. *State v. Sanders*, 124 Ariz. 318, 604 P.2d 20 (1979). The second factor which undercuts the defendants' argument is that Arizona's new criminal code provides a statutory inference to support guilty knowledge by mere possession. A.R.S. § 13–1802(B) specifically applies the statutory inferences of A.R.S. § 13–2305 to A.R.S. § 13–1802(A)(5). A.R.S. § 13–2305(1) states:

 Proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property was aware of the risk that it had been stolen or in some way participated in its theft.

 Here, there was substantial evidence to show that both defendants were in control of the stolen gun. Rigoberto demonstrated his connection with the gun when he told the arresting officer that it was in the trunk. Elizabeth exhibited her knowledge when she claimed possession of the luggage. The inference of knowledge that it was stolen was provided by the statutory inference and the fact that the victim testified that the gun was stolen on August 17, 1979, only 25 days before it was found in the Curiel's trunk. Thus, the evidence was sufficient to support the verdicts.

Next, we turn to the arguments presented solely by appellant Elizabeth.

## SEVERANCE

Prior to trial Elizabeth moved to sever her trial from that of her husband's on the ground that the evidence relating to her husband's previous sale of narcotics on August 6, 1979, would be unduly prejudicial to her case. In addition, she moved to sever the heroin charges from the charge of theft of the gun. The motion was denied and renewed after the *voir dire* of the jury as required by Rule 13.4(c). The motion was again denied.

 Turning first to the joinder of defendants, we begin with Rule 13.3(b) which provides:

 Two or more defendants may be joined when each defendant is charged with each offense included, or when the several offenses are part of a common conspiracy, scheme or plan or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others.

Here, because of the separate related charge against her husband of sale of heroin on August 6, 1979, joinder as to her was proper only under the theory that the offenses were part of a common conspiracy, scheme or plan. However, the joinder and severance rules must be read together. *State v. Henderson*, 116 Ariz. 310, 569 P.2d 252 (App.1977). Rule 13.4 deals with severance and subsection (a) states:

 Whenever 2 or more offenses or 2 or more defendants have been joined for

2. *See State v. Grijalva*, 8 Ariz.App. 205, 445 P.2d 88 (1968) and *State v. Tellez*, 6 Ariz.App. 251, 431 P.2d 691 (1967).

trial, and severance of any or all offenses, or of any or all defendants, or both, is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of a party, order such severance.

Here, while the previous sale was admissible in the trial against Rigoberto as it weighed on the question of his possession of heroin with intent to sell, it was in no way relevant to Elizabeth's intent as there was nothing in the evidence to show any knowledge or participation on her part in the August 6, 1979 incident. We cannot say that this evidence did not contribute to the conviction of Elizabeth on the count of possession of heroin for sale or on the count of transportation of heroin of a value of more than $250.00.

■■■■■ As to joinder of counts, we also find error in failure to sever the heroin counts from that of possession of the stolen gun. Rule 13.3(a)(2) permits joinder of counts where the crimes "[a]re based on the same conduct or are otherwise connected together in their commission." The fact that the crimes were committed on the same day does not by itself connect them in their commission. *State v. Stago*, 82 Ariz. 285, 312 P.2d 160 (1957). We find nothing in the record to show that the heroin charge and the theft charge were "based on the same conduct" and obviously they were not "connected together in their commission." The only thing connecting the two charges is that they both came to light as the result of a search of one automobile. In our opinion, the fact that evidence of two crimes has come from one source is not sufficient under Rule 13.3(a) to justify their joinder.

In light of the inherent prejudicial impact of the heroin charges on the charge of theft of a gun, we cannot say that failure to sever was not prejudicial. Thus, the matter must be remanded for a new trial as to Elizabeth on all counts.

## SUFFICIENCY OF THE EVIDENCE

■■■■■ Finally, Elizabeth claims that her motions for judgment of acquittal should have been granted as to both drug counts. A judgment of acquittal may only be granted if there is no sufficient evidence to warrant a conviction. Rule 20, 17 A.R.S. Rules of Criminal Procedure. Here, Elizabeth was charged as an accomplice to her husband's acts. The value of the heroin found in the cannister was clearly established to be more than $250.00. The evidence of her attempt to hide the cannister, in addition to the paraphernalia found in her purse and in the glove box, was sufficient to support her convictions.

For the reasons stated, the judgments and sentences are affirmed as to appellant Rigoberto Curiel. As to Elizabeth Curiel the convictions are set aside and the matter is remanded to the trial court for further proceedings consistent with this decision.

HAIRE, P. J., and EUBANK, J., concur.