OPINION
HOWARD, Chief Judge.
Appellant, found guilty by a jury of unlawful possession of marijuana and theft under $100 with a prior offense, was sentenced to time served on the marijuana (misdemeanor) conviction and 4.25 years in prison on the theft. He contends the trial court erred in (1) denying his motion to suppress the evidence; (2) refusing to grant his motion for mistrial, and (3) denying his motion to suppress the statements he made at the scene of his arrest. We do not agree and affirm.
At approximately 1 a.m. on February 25, 1982, Officer Osier of the Tucson Police Department stopped a car near Speedway Boulevard and Craycroft Road in Tucson. Officer Aussems, also on that beat, came to observe the stop. The officers discovered two juveniles in the car, and ordered appellant, the driver, to take them, home because they were violating the curfew ordinance.
About 30 minutes later, Officer Aussems was making his usual rounds near Smuggler’s Inn, just down the street from the original stop of appellant’s vehicle. As he was slowly driving his vehicle near the motel complex parking lot, without his lights on, he observed another motor vehicle parked in an area not usually used for parking. He saw two subjects run from the area where the patrons’ vehicles were parked toward the parked vehicle. He observed the subjects enter the vehicle and the vehicle started to move inside the parking lot with its headlights off. When the officer put his headlights on, the headlights of the other vehicle came on and the officer could observe that the vehicle was the same one that he and Officer Osier had stopped earlier. The vehicle reacted to his red light and spotlight and stopped.
Officer Aussems radioed for assistance, intending to impose a curfew violation upon the juveniles, and arrest appellant for contributing to the delinquency of a minor. Officer Aussems did a quick body search of appellant and found a handful of .25-caliber cartridges in his pocket as well as a box of .25-caliber cartridges. He also found 40 marijuana cigarettes in one of appellant’s pockets. Officer Aussems asked appellant where the gun was that went with the bullets and appellant responded he did not have a gun. The officer then asked appellant why he had the cartridges and appellant said that he had a gun at home.
After appellant had been arrested, Officer Sherwood, who had been called to the scene, made an inventory search of the vehicle appellant had been driving. He handed the pistol over to Officer Aussems, who placed it into police property. Officer Aussems did not have any information at the time he placed the pistol into police property that it had been stolen from the L & W Pawn Shop. The reason that he placed it into property was because appellant had been charged with a misdemeanor for carrying a concealed weapon. Since fingerprints found at the scene of the pawn shop burglary did not match appellant’s, the state premised his criminal liability on the theory that appellant knew or should have known that he possessed stolen property.
As for the stop of appellant’s car at the motel, Officer Aussems testified as follows:
“Q. Did the car’s headlights come on before yours came on?
A. No, it [sic] did not.
Q. What happened then?
A. When I turned on my headlights, its headlights came on. The vehicle moved south bound. When it was almost directly in front of me I turned on my red lights and my spotlight to illuminate the inside of the vehicle.
Q. Now, at this point were you just about to physically stop the vehicle, did you recognize this car?
A. At this time I recognized it to be the same vehicle that Officer Osier had stopped earlier on Speedway and Cray-croft.”
*445 The police may make an investigatory stop of an automobile where there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v. Curiel, 130 Ariz. 176, 634 P.2d 988 (App.1981). Here, the officer had previously seen the stop and knew that there were three people in the automobile, two of whom were minors violating the curfew ordinance.
When he saw two people run to the automobile and saw it drive away, and further recognize the automobile as being the one that had been earlier stopped, there were articulable facts warranting the stop of the vehicle.
During the redirect examination of Officer Aussems by the state, the following transpired:
“Q. (By prosecutor): What was your purpose in putting the weapon [discovered during the search by the police after appellant’s arrest] into property?
A. Mr. Waggoner had been charged with a misdemeanor for ccw,[1] and was to be kept for purposes—
Q. Did you put it in for safe keeping?” (Emphasis added)
Appellant immediately objected and moved for a mistrial which the trial court refused to grant.
Appellant contends that the trial court erred in denying his motion for mistrial because the evidence of the commission of another crime violated Rule 404(b), Arizona Rules of Evidence, 17A A.R.S., which provides:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”
We do not agree. The jury knew that the pistol was in the automobile. Later testimony, which was admitted without objection, showed that the pistol was found under the passenger’s seat. The testimony that appellant was charged with carrying a concealed weapon added little to what the jury knew from the other evidence. Officer Aussems’ testimony was not prejudicial.
Was it necessary for Officer Aussems to give appellant his Miranda rights and have appellant waive those rights prior to asking him about the whereabouts of the pistol? The state, relying on Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) and United States v. Booth, 669 F.2d 1231 (9th Cir.1981), contends the officer was not required under the facts here to give appellant his Miranda rights prior to asking about the pistol. We agree.
In Rhode Island v. Innis, supra, the Supreme Court considered what type of words or conduct on the part of the police constituted interrogation. The Court held that interrogation may be accomplished by express questioning or its functional equivalent and defined the latter to include any statements or actions that the police should know are reasonably likely to elicit an incriminating response from the suspect. In United States v. Booth, supra, the Court, in discussing Innis, opined that not every question posed in a custodial setting is equivalent to interrogation. The Court in Booth held that custodial interrogation is involved whenever, under all the circumstances in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect. The Court also stated, inter alia:
“... On the other hand it is relevant, but not determinative, that a question posed was not related to the crime or the suspect’s participation in it. Ordinarily, the routine gathering of background biographical data will not constitute interrogation____ Thus we emphasize that the ultimate test for whether questioning *446 constitutes interrogation is whether, in the light of all the circumstances, the police should have known that a question was reasonably likely to elicit an incriminating response.” 669 F.2d at 1238.
Booth does not stand for the proposition that if the questions asked are not related to the crime for which appellant is being arrested that there is no custodial interrogation. Such a rule would be patently absurd since it would allow the police to question a suspect about other crimes with impunity. However, we do not believe that the police should have known that this question was likely to elicit an incriminating response. The weapon could have been at home or in a case or holster in the trunk or glove compartment of the car in which case it would not have been a concealed weapon. See A.R.S. § 13-3102(B) and (F).
HATHAWAY and BIRDSALL, JJ., concur.

. “ccw” means carrying a concealed weapon.