NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

NICHOLAUS C.,
*Appellant*,

*v.*

SARAH C., I.C.,
*Appellees*.

No. 1 CA-JV 16-0028
FILED 9-20-2016

---

Appeal from the Superior Court in Yavapai County
No.  P1300SV201500007
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

Gillespie, Shields, Durrant & Goldfarb, Phoenix
By DeeAn Gillespie Strub
*Counsel for Appellant*

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Guardian ad litem for I.C., Appellee*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

**¶1**　　　　Nicholaus C. ("Father") appeals from an order terminating his parental rights.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　During dissolution proceedings between Father and Sarah C. ("Mother"), the superior court appointed Debra Phelan as the best interest attorney for the parties' daughter, I.C.  Ms. Phelan subsequently filed a petition to terminate Father's parental rights, alleging he had sexually abused I.C.  Mother supported the severance petition.

**¶3**　　　　The superior court appointed Ms. Phelan as I.C.'s guardian *ad litem* ("GAL") in the severance proceedings.  After a contested severance trial, the court terminated Father's parental rights, concluding clear and convincing evidence established he had "neglected [I.C.] by sexually abusing her." The court further found that terminating Father's parental rights was in I.C.'s best interests.

**¶4**　　　　Father filed a timely notice of appeal.  We have jurisdiction pursuant to Arizona Rule of Procedure for the Juvenile Court 103(A) and Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), -2101(A)(1).

**DISCUSSION**

**¶5**　　　　To terminate parental rights, the superior court must find a statutory ground for severance by clear and convincing evidence. A.R.S. § 8-537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, ¶ 7 (2005).  The court must also find by a preponderance of the evidence that termination is in the child's best interests.  *See* A.R.S. § 8-533(B); *Calvin B. v. Brittany B.*, 232 Ariz.

292, 296, ¶ 18 (App. 2013).[1]  We review an order terminating parental rights for an abuse of discretion and will affirm the superior court's decision if it is supported by sufficient evidence.  *Kenneth B. v. Tina B.*, 226 Ariz. 33, 36, ¶ 12 (App. 2010).  In determining whether a statutory ground for severance exists, we consider the evidence in the light most favorable to sustaining the superior court's ruling.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000).

**¶6**      Father does not dispute that sexual abuse of I.C., if proven, would warrant termination of his parental rights.  *See* A.R.S. § 8-533(B)(2) (grounds for severance include willful abuse of a child).  He instead challenges various rulings that we discuss in turn.

## I.      Expert Testimony

**¶7**      Father first contends the court should have permitted forensic psychologist Richard Lanyon to offer expert testimony about the reliability of I.C.'s claims of sexual abuse.  We conclude otherwise.

**¶8**      A person may testify as an expert if, as a threshold matter, his or her specialized knowledge will assist the fact-finder in understanding the evidence — a determination that rests within the sound discretion of the trial court.  *See State v. Mincey*, 141 Ariz. 425, 441 (1984).  Absent a clear abuse of discretion and resulting prejudice, we will not overturn the trial court's ruling regarding a witness's competence to offer expert testimony. *Lohmeier v. Hammer*, 214 Ariz. 57, 64, ¶ 25 (App. 2006).

**¶9**      After Dr. Lanyon testified at the severance trial about his professional qualifications and experience, the following exchange occurred:

> **[FATHER'S COUNSEL]**:  Your Honor, I would like to move to have Dr. Lanyon qualified as an expert.
>
> **THE COURT**:   In the field of?
>
> **[FATHER'S COUNSEL]**:  In the field of sexual abuse and being able to . . . look at the soundness of the investigative

---

[1]      Father has not challenged the best interests determination.  We therefore do not address that statutory requirement.  *See MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 304 n.7, ¶ 19 (App. 2008) (arguments not developed on appeal are waived).

procedures and whether or not the statements by the child made in those procedures are reliable.

**[GAL]**: Your Honor, I don't agree with that. I think Dr. Lanyon is very qualified for many reasons, but to opine as to whether the child's statements are reliable or not, I don't believe he is qualified as an expert in that area.

¶10 The court declined to recognize Dr. Lanyon as an expert "in the area set forth," but stated that Father's counsel could "ask some more foundational questions." Dr. Lanyon thereafter testified he would apply research literature and "accepted clinical procedures" to assess "the likelihood that the information given by the child is reliable." He explained that he had reviewed "transcripts" of two forensic interviews of I.C., police department records, therapy records, and a psychosexual evaluation of Father. Dr. Lanyon had not, however, reviewed the video recordings of I.C.'s interviews. The court expressed concern "that an expert of this caliber wasn't given the DVDs to watch" and noted that the "transcripts" Dr. Lanyon relied on had "no certification from a certified court reporter or a signature that it is an authentic transcription of the DVD." Ultimately, the court refused to "qualify Dr. Lanyon as an expert to opine as to whether or not this particular child's statements were reliable."

¶11 Implicit in the court's ruling was the conclusion that Dr. Lanyon's opinions about the reliability of I.C.'s claims would not assist it as the trier of fact. Moreover, "[e]xperts called to testify about behavioral characteristics that may affect an alleged victim's credibility may not give an opinion of the credibility of a particular witness. Psychologists and psychiatrists are not, and do not claim to be, experts at discerning truth." *State v. Moran*, 151 Ariz. 378, 385 (1986); *see also State v. Lindsey*, 149 Ariz. 472, 473–74 (1986) (distinguishing between permissible expert testimony about general behavioral characteristics of child molestation victims and impermissible opinion testimony about an alleged victim's credibility); *State v. Reimer*, 189 Ariz. 239, 241 (App. 1997) ("Arizona courts have expressly determined that neither expert nor lay witnesses assist the trier of fact to understand the evidence or to determine a fact in issue when they merely opine on the truthfulness of a statement by another witness.").

¶12 The superior court did not preclude Dr. Lanyon from testifying about other topics, and it specifically considered his written report before ruling, which identified concerns about the forensic interview of I.C. Under these circumstances, and given the limited offer of proof

Father made regarding Dr. Lanyon's proposed testimony, the superior court did not abuse its discretion.

## II.     Pretrial Motions

¶13        Father next challenges the resolution of three pretrial motions he filed:  (1) "Motion to Appoint a New Counselor For Minor Child [I.C.];" (2) "Motion for this Court to Order Cooperation of Mother's Attorney, the Best Interest Attorney, and Minor Child's Counselor to Provide HIPAA Releases for Mother's and Minor Child's Care Providers and Notes of Counseling Sessions;" and (3) "Motion for: (1) Appointment of Dr. Celice Korsten, Psy.D. to Perform a Custody Evaluation; and (2) Appointment of Polly Thomas to Perform a Home Study."

¶14        The GAL moved to strike all three motions, relying, in part, on Arizona Rule of Procedure for Juvenile Court 46(A), which applies to termination of parental rights proceedings and provides:

> All motions shall be in writing, unless otherwise authorized by the court, and shall set forth the basis for the relief sought. *The party filing the motion shall state the positions of the other parties as to the issues raised in the motion or shall inform the court of the efforts made to reach the other parties if their positions are not known.*

(Emphasis added.)   The motion to strike avowed that Father had not contacted the GAL or Mother's counsel to obtain their positions and observed that, had Father followed Rule 46(A), "perhaps some agreements could have been reached and Father's counsel could have avoided the superfluous" filings.  The superior court granted the motion to strike.

¶15        Father does not contend he complied with Rule 46(A).  He instead argues that motions to strike are disfavored and that because his motions "went directly to the merits of the contentious issues in this matter," the court should have resolved them on the merits.  The motions, though, clearly failed to comply with Rule 46(A) and were properly stricken on that basis.  And contrary to Father's suggestion, nothing in the record reflects that he was precluded from re-filing these motions in compliance with Rule 46(A).[2]

---

[2]     After the court granted the motion to strike, the GAL expressed continuing concern that Father was filing non-compliant "pleadings" and

### III. Evidence Regarding Polygraph

**¶16** Father next argues the court erred by admitting an exhibit that included information about a polygraph examination administered to him and by permitting the GAL to question him about the exam.

**¶17** Father, Mother, and the GAL all identified a report by Diane Genco entitled "Comprehensive Sexual Risk Assessment and Treatment Recommendations" as a trial exhibit.[3] That report discusses a polygraph examination administered to Father. Father submitted an unredacted copy of Ms. Genco's report as an exhibit. At the severance trial, though, he sought to substitute the exhibit he had previously submitted with a version that redacted information about the polygraph. The GAL objected. The court ruled that Father had not timely objected to the unredacted report and admitted the exhibit Father originally submitted.

**¶18** We have concerns about the court's reliance on the timeliness of Father's objection. The GAL and Mother first identified Ms. Genco's report as a trial exhibit in a July 20, 2015 filing. Father filed a written objection to that disclosure, stating, in pertinent part:

> Psychosexual Evaluation of Father. Objection: Relevance, unfairly prejudicial and misleading to the extent it contains information regarding inadmissible polygraph testing, under Rules 401- 403, and *Hyder v. Superior Court*, 127 Ariz. 36, 614 P.2d 1152 (1980).

**¶19** The GAL and Mother later filed a "final" list of witnesses and exhibits that again listed Ms. Genco's report. It does not appear that Father timely objected to that filing. A fair reading of the record, though, reflects that Father made clear well before trial that he objected to the unredacted

---

asked that counsel "follow the Juvenile Rule 46 which requires her to notify counsel that she is intending to file something and to obtain positions to relay to the Court." The superior court "confirm[ed] that the Juvenile Rules require that counsel contact the other attorneys and get positions prior to filing a motion and that their positions be included in the motion." The court also struck Father's re-filed motions because they too failed to comply with Rule 46.

[3] Father referred to the report as "Confidential Sexual risk Assessment." The GAL and Mother identified it as "Certified copy of Psychosexual evaluation of Father conducted and written by Diane Genco, report date 1/8/15."

report. Unfortunately, Father compounded the confusion by submitting the unredacted report as his own trial exhibit.

¶20 We assume *arguendo* that the court erred by admitting the unredacted report. *See, e.g.*, *State v. Molina*, 117 Ariz. 454, 456 (App. 1977) (although paternity action is not a criminal proceeding, same standards apply to polygraph evidence, requiring written stipulation of parties for admission). We will not, however, "disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears *and prejudice results*." *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 506 (1996) (emphasis added). "[W]here evidence is erroneously admitted, reversal is required only when it is reasonably probable that, absent the tainted evidence, the jury would have reached a different conclusion." *State v. Curiel*, 130 Ariz. 176, 182 (App. 1981); *see also Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 88, ¶ 7 (App. 1998) ("The improper admission of evidence is not reversible error if the jury would have reached the same verdict without the evidence.").

¶21 In its ruling, the court did not mention the polygraph examination or Father's brief trial testimony about the exam when discussing the grounds for severance.[4] The court instead explained its reasoning as follows:

> The Court has reviewed all of the exhibits, including the video (Exhibit 6) and the recording of the confrontation call (Exhibit 4), multiple times. The Court finds that there is clear and convincing evidence that Father sexually abused the child. Counsel for Father pointed out that the Father was never criminally charged for sexual abuse, but the Court does not find that to be conclusive. Detective Mora of the Prescott Police Department, who conducted the first interview of the child after the abuse was reported, testified that if the jurisdiction would not have been in Surprise, Arizona, that he would have pursued charges in Yavapai County. The Court has reviewed Exhibit 9, the records review of Dr. Lanyon, and considered Dr. Lanyon's testimony presented at the Contested Adjudication. The failure of Dr. Lanyon to review the video interviews of the child (instead relying on a transcript – the preparer of which could not be established, as

---

[4] The court did mention Ms. Genco's report when discussing I.C.'s best interests. As noted *supra*, though, the best interests determination has not been challenged on appeal.

there was no indicator that a certified court reporter had prepared the document or that it was an accurate transcription of the video interview) casts doubt on his ability to render a reliable opinion on the validity of the child's statements. The Court notes that the Child made gestures and motions when recounting the allegations to Detective Jones (Exhibit 6) which would not have been captured in a written transcript. The Court found the video helpful in determining the credibility of the child's statements.

¶22 Given the fact that severance trials are to the bench (not a jury), and because Father has not established that, "absent the tainted evidence, the [trier of fact] would have reached a different conclusion," *Curiel*, 130 Ariz. at 182, we find no reversible error stemming from the admission of his unredacted trial exhibit.

## IV. Request to Remove GAL as Petitioner

¶23 Finally, Father contends the court erroneously denied his motion to remove Ms. Phelan as petitioner. His motion argued Ms. Phelan had "a clear conflict of interest," was biased, and had "already made up her mind that Father's parental rights to [I.C.] should be severed." Father asked the court to remove Ms. Phelan as petitioner and substitute Mother in her stead.

¶24 We assume, without deciding, that the roles of petitioner and GAL may have been — at least to some extent — incompatible and that it may have been prudent to substitute Mother as petitioner, maintaining Ms. Phelan as the GAL. Even so, Father has demonstrated no resulting prejudice. Ms. Phelan still would have participated in the severance trial as GAL — introducing evidence, cross-examining witnesses, and submitting arguments. At most, we are faced with a technical error that had no demonstrable effect on the outcome of the severance proceedings. *See* Ariz. Const., art. 6, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."). We therefore find no reversible error.

**CONCLUSION**

¶25       For the foregoing reasons, we affirm the order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:   AA