859 P.2d 169

**STATE of Arizona, Appellee/Cross–Appellant,**

v.

**Sean Bernard RUNNINGEAGLE, Appellant/Cross–Appellee.**

**STATE of Arizona, Appellee/Cross–Appellant,**

v.

**Corey Preston TILDEN, Appellant/Cross–Appellee.**

Nos. CR–89–0046–AP/PC, CR–89–0048–AP.

Supreme Court of Arizona, En Banc.

April 20, 1993.

Reconsideration Denied June 15, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals, Jon G. Anderson, Asst. Atty. Gen., and Janet Keating McNaughton, Former Asst. Atty. Gen., Phoenix, for the State.

John M. Antieau, Phoenix, for Runningeagle.

Dean W. Trebesch, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, for Tilden.

## OPINION

MARTONE, Justice.

Sean Runningeagle was found guilty of two counts of first degree murder, two counts of theft, and one count each of first degree burglary, second degree burglary, and third degree burglary. He was sentenced to death on the murder convictions and to prison terms on the non-capital convictions. Appeal to this court is automatic under Rules 26.15 and 31.2(b), Ariz.R.Crim. P., and direct under A.R.S. § 13–4031. We granted review of the denial of his petition for post-conviction relief, and consolidated it with the appeal.

Corey Tilden was tried with Runningeagle and convicted of the same charges except third degree burglary. He was sentenced to life terms on the murder charges and to additional prison terms on the remaining counts, to be served consecutively. Tilden appeals pursuant to Rules 31.2(a) and 31.3, Ariz.R.Crim.P., and A.R.S. § 13–4033. The state cross-appeals. Because we affirm all convictions and sentences, the cross-appeal is moot.

### FACTS

In the early morning of December 6, 1987, Runningeagle, Tilden, and their two friends Orva and Milford Antone, were driving around Phoenix. Runningeagle wanted parts for his car, so the foursome stopped at the Davis house, which had a car parked outside. Runningeagle, Tilden and Orva got out of the car, while Milford remained passed out drunk in the back seat. Runningeagle used his large hunting knife to remove two carburetors from the Davis car. Orva put them and an air scoop in the trunk of Runningeagle's car. Tilden

and Runningeagle also stole a floor jack and tool box. Orva took a bicycle from the open garage.

Herbert and Jacqueline Williams, an elderly couple, lived next door to the Davises. Mr. Williams came out of his house and told the young men to leave or he would call the police. Orva returned to the car, but Runningeagle and Tilden approached Mr. Williams. Runningeagle concealed his knife by his side. Tilden carried a large, black flashlight. Runningeagle then began to tease and scare Mr. Williams with the knife. Mr. Williams retreated and told Runningeagle to put the knife away. Mrs. Williams then came out of the house and yelled at them. Tilden confronted Mrs. Williams, argued with her, and then hit her on the side of the head with the flashlight. Mr. Williams told them to leave his wife alone, and helped her back into the house. Runningeagle broke through the Williams' door with a tire iron, and he and Tilden barged in.

The noise awakened a neighbor, who heard Mrs. Williams crying and the words "bring him in" spoken by a tall, young man he saw standing in the Williams carport. The neighbor called "911," but by the time the police arrived, Mr. and Mrs. Williams were dead. Mr. Williams suffered several head injuries and five stab wounds, three of which were fatal. Mrs. Williams also suffered several head injuries, one of which fractured her skull and was possibly fatal, in addition to four stab wounds, three of which were fatal.

The police searched the Williams home. The drawer in which Mrs. Williams stored her jewelry was open and some jewelry was missing. They found an empty purse, blood drops and two bloody shoe print patterns. They discovered Runningeagle's palm print on the clothes dryer next to the bodies.

Runningeagle discussed the crimes on several occasions before his arrest. He told his girlfriend that he had been in a fight with two people and had hit them "full-force." He showed her his car trunk full of the stolen property. He showed the hood scoop and carburetors to another friend. Tilden, too, spoke about the crimes and informed Runningeagle that an account of the burglary was on the radio and that "they got there an hour after we left."

When the defendants were arrested, the police found, among other things, the Davis air scoop with Runningeagle's prints on it, two carburetors, the tool box, Mrs. Williams' wallet and college pin, a large black flashlight with Tilden's prints on it, and the Davis bicycle with Runningeagle's prints on the wheel rim. A Phoenix Police Department criminalist matched Runningeagle's shoes with the bloody shoe prints found at the Williams house, and also found that an inked print of Tilden's shoes made a pattern similar to other shoe prints at the house.

Runningeagle, Tilden, and Orva Antone were indicted on two counts of first degree murder, and one count each of first degree burglary of a residence, second degree burglary of a residence, third degree burglary of a car, theft of property valued between $500 and $1000, and theft of property valued between $250 and $500. Orva Antone pleaded guilty to burglary and testified for the state at the joint trial.

## ISSUES

Runningeagle raises the following issues:

1) Whether he was denied effective assistance of counsel on the grounds that his trial counsel failed to join in Tilden's motion to sever and made a deficient closing argument.

2) Whether the trial court erred by denying his motion for mistrial based upon the prosecutor's opening statement.

3) Whether the trial court failed to make an adequate finding, pursuant to *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), that Runningeagle actually killed, attempted to kill, or intended to kill either victim.

4) Whether the aggravating factor of especially cruel, heinous, or depraved under A.R.S. § 13–703(F)(6), was unconstitutionally vague as applied.

5) Whether the aggravating factors of pecuniary gain and especially cruel, heinous, or depraved were inapplicable because of lack of proof that Runningeagle killed either victim.

6) Whether the trial court erred by finding:

A. That Runningeagle committed these murders in the expectation of pecuniary gain under A.R.S. § 13–703(F)(5).

B. That Runningeagle committed these murders in an especially cruel, heinous, or depraved manner under A.R.S. § 13–703(F)(6).

7) Whether the trial court erred in concluding that the mitigating factors failed to require leniency.

8) Whether the trial court erred in imposing a consecutive sentence for burglary.

Tilden raises the following issues:

1) Whether the trial court erred by refusing to give his requested instruction on manslaughter as a lesser included offense.

2) Whether the trial court erred by refusing to grant his motion to sever his case from Runningeagle's.

3) Whether the trial court erred by refusing to grant his motion for mistrial based upon the prosecutor's opening statement.[1]

4) Whether the trial court erred by allowing expert shoe print comparison testimony.

## ANALYSIS

### RUNNINGEAGLE

#### I. *Ineffective Assistance of Counsel*

■ Runningeagle contends that he was denied effective assistance of counsel because his lawyer failed to join in Tilden's motion to sever the trial, and because his lawyer's closing argument was deficient. Runningeagle's Rule 32 petition on this issue was dismissed without a hearing. The defendant is entitled to an evidentiary hearing only when he presents a colorable

claim—one that, if the allegations are true, might have changed the outcome. *State v. Watton,* 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990). There is no colorable claim here.

■ The defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *State v. Walton,* 159 Ariz. 571, 591–92, 769 P.2d 1017, 1037–38 (1989), *aff'd* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

■ Runningeagle argues that because Tilden's defense was adverse to his own, his lawyer had no legitimate tactical reason for not moving for severance. But, as discussed more fully below in connection with Tilden, Runningeagle's and Tilden's defenses were not antagonistic to the point of being mutually exclusive. Because severance was not required, counsel's failure to take a position on the motion to sever was not deficient.

Runningeagle also argues that his trial counsel failed to argue an affirmative defense, but does not tell us what affirmative defense should have been presented. Runningeagle argues that defense counsel conceded that the state had proven virtually every element of the case. But the record does not support the argument. Runningeagle's lawyer merely argued in alternative hypotheticals. His argument was not deficient.

Because Runningeagle failed to show that counsel's conduct was deficient, the trial court properly dismissed his petition for post-conviction relief.

#### II. *The Prosecutor's Opening Statement*

■ In his opening statement, the prosecutor described the setting of the murders as follows:

> [The Williams] went out to the kitchen area, started a pot of coffee, turned the radio on, sat down at the kitchen table. What happened in the next 10, 15, 20 minutes can only be described as unspeakable horror. It was evil. What happened in that next 10, 15, 20 minutes

---

1. See note 2, *infra,* for the disposition of this issue.

ended everything for Jackie and Herbert Williams. And the cause and the reason that it ended is right here in the courtroom. The evil is among us.

Reporter's Transcript of June 28, 1988, at 18. The trial court sustained a defense objection, but denied a mistrial. Runningeagle argues that the statements were an appeal to passion and prejudice, entitling him to a new trial.

Although the prosecutor's use of the words "horror" and "evil" was argument and, thus, objectionable, there was no appeal to passion or prejudice. The words were merely a characterization of the evidence. The evidence would show horror. The evidence would show evil behavior. These were reasonable inferences to be drawn from the evidence. That inferences were made at the beginning of the case, rather than at the end of the case where they belonged, does not warrant a new trial. The court properly denied the motion for mistrial.[2]

### III. *The* Enmund *Finding*

■ Runningeagle argues that the trial court failed to make a finding, pursuant to *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), that he actually killed, attempted to kill, or intended to kill either victim. Runningeagle further alleges that no such finding was possible.

*Enmund* is satisfied in this case. It is the substance of the finding rather than its label which counts. *State v. McCall*, 160 Ariz. 119, 126, 770 P.2d 1165, 1172 (1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990) (finding made in context of rejecting a proffered mitigating factor satisfies *Enmund* requirement). Before imposing Runningeagle's sentence on the non-capital counts, the trial judge listed as an aggravating circumstance "[k]illing helpless individuals." Special Verdict at 10. And, in sentencing Tilden, the court found that Runningeagle, and not Tilden, did the actual stabbing. The trial

court therefore found Runningeagle in fact killed the victims, and we agree.

### IV. *Vagueness of A.R.S. § 13–703(F)(6) as Applied*

Runningeagle next argues that the § 13–703(F)(6) "especially heinous, cruel or depraved" factor is unconstitutionally vague as applied to him because of the "pattern of arbitrariness in finding this factor, without adherence to statutory requirements."

But the special verdict relied on § 13–703(F)(6), and applied constitutionally limited definitions of the terms "cruel," "heinous" and "depraved." The record does not support the assertion that this aggravating factor was applied "without adherence to statutory requirements."

### V. *Lack of Proof of Aggravating Factors*

■ Runningeagle next argues that two aggravating factors found by the trial court, pecuniary gain (A.R.S. § 13–703(F)(5)) and especially heinous, cruel or depraved manner (A.R.S. § 13–703(F)(6)) are inapplicable because of lack of proof beyond a reasonable doubt that he killed either Mr. or Mrs. Williams. He also claims that A.R.S. § 13–703(F)(6) is vague as applied for that same reason. But the jury found beyond a reasonable doubt that Runningeagle committed first degree murder and the trial judge's findings in the special verdict established sufficient culpability on Runningeagle's part to receive the death penalty pursuant to *Enmund*. These arguments are without merit.

### VI. *Aggravating Factors*

■ Runningeagle argues that there is insufficient evidence to support the findings of pecuniary gain and cruelty, heinousness or depravity. In all death penalty cases, this court independently reviews the record to determine the presence or absence of aggravating factors and whether the state proved the aggravating factors beyond a reasonable doubt. *State v. Greenway*, 170 Ariz. 155, 163, 823 P.2d 22, 31 (1991).

---

**2.** Tilden makes the same contention. We reject it for the same reason.

## A. *Pecuniary Gain*

■ Runningeagle argues that there is no evidence that he committed the murders in the expectation of pecuniary gain. Specifically, he argues that because he was stealing and burglarizing the Davis property when the Williams interrupted, pecuniary gain was not the motivation for killing them. He contends the burglary of the Williams home was merely an afterthought.

But Runningeagle was out to steal that night. He burglarized and stole from the Davises. The Williams interrupted the Davis burglary in progress. He killed the Williams to complete the burglary of the Davises. He also killed them to steal from them. We agree with the trial court that Runningeagle killed the Williams in expectation of pecuniary gain. *State v. Williams*, 166 Ariz. 132, 800 P.2d 1240 (1987), *cert. denied*, —— U.S. ——, 111 S.Ct. 2043, 114 L.Ed.2d 128 (1991).

## B. *Especially Cruel, Heinous or Depraved Manner*

Runningeagle argues that he did not commit these murders in an especially cruel manner because there is no evidence that he intended to cause the Williams to suffer or that the Williams were even conscious when the fatal wounds were inflicted. The argument that cruelty cannot be found because Runningeagle did not intend that the Williams suffer is foreclosed by *Greenway*, 170 Ariz. at 166, 823 P.2d at 33. It is clear that Runningeagle knew or should have known that his actions would cause suffering.

■ A crime is committed in an especially cruel manner when the perpetrator inflicts mental anguish or physical abuse before the victim's death. *Greenway*, 170 Ariz. at 165, 823 P.2d at 32. We find that the murders were especially cruel. Runningeagle taunted both victims with his brutal-looking survival knife. After the Williams retreated into their home, Runningeagle pursued them by breaking through the door with a tire iron. One of Mr. Williams' stab wounds went through his left forearm, indicating that he was trying to fend off the attack. Mrs. Williams had a superficial knife wound on her neck consistent with having a knife pressed to her throat. A neighbor heard Mrs. Williams crying. Expert testimony established that the Williams lived for three to four minutes after being stabbed. These facts support the finding that Mr. and Mrs. Williams suffered, and watched each other suffer, horrible physical and mental pain before death. The trial court did not err in finding that these murders were especially cruel.

■ Runningeagle also argues that the murders were not committed in an especially heinous or depraved manner. Unlike cruelty, which focuses on the victim's pain and suffering, heinousness and depravity focus on the killer's mental state and attitude. In *State v. Gretzler*, 135 Ariz. 42, 52–53, 659 P.2d 1, 11–12, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), this court established five factors to determine whether conduct is heinous or depraved: (1) defendant relished the murder; (2) needless mutilation of the victim; (3) gratuitous violence beyond that necessary to kill; (4) helpless victim; and (5) senseless crime.

Runningeagle contends that even if the victims were helpless and their killing senseless, as we so find, that is not enough. He argues that a more substantial factor must be present. While it is true that helplessness and senselessness may be insufficient in some cases, *id.*, here we have more. Runningeagle relished the murders. Orva Antone's testimony that both defendants laughed as they came back to the car after having murdered the Williams establishes beyond a reasonable doubt that they enjoyed and relished the horror they had just inflicted. Runningeagle also bragged to his girlfriend that he had been in a "good fight." The trial court did not err in finding that the murders were committed in an especially heinous or depraved manner.

## VII. *Mitigating Factors*

Runningeagle argues that his age and psychological condition are mitigating factors that call for leniency and that his lack of remorse was improperly used by the trial court to discount the mitigation presented.

 Runningeagle was a day short of his nineteenth birthday when he murdered Mr. and Mrs. Williams. Although age is a mitigating factor, § 13–703(G)(5), "[i]n addition to chronological age ... we also look at such factors as a defendant's intelligence and past experience to determine whether age is a mitigating circumstance." *State v. Atwood*, 171 Ariz. 576, 652–54, 832 P.2d 593, 669–70 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). Runningeagle is of superior intelligence, and is neither immature nor younger than his years. He was on felony probation as an adult when he murdered the Williams. In all events, the extent and duration of his participation in this cruel and heinous crime minimize age as a mitigating factor. *State v. Gillies*, 142 Ariz. 564, 571, 691 P.2d 655, 662 (1984). We find that the trial court did not err in finding that Runningeagle's age was not a mitigating factor sufficient to warrant leniency.

 Nor does Runningeagle's psychological evidence warrant a finding under A.R.S. § 13–703(G)(1) that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired. One of the psychologists stated that Runningeagle "has always been fully aware of his own behavior, the probable consequences of this behavior, and that there was a rather complete lack of empathy or feelings toward any victim." Psychological Evaluation by Dr. Francis A. Enos, Photostated Instruments at 83–Aj. His father said that Runningeagle is intelligent and accepts responsibility. His mother testified that he received good grades in school. Another psychologist said that Runningeagle is in control of his behavior at all times, but has an habitual pattern of doing what he wants. The trial court did not err in finding that Runningeagle was

not suffering from any mental disease or disorder that would impair his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

Runningeagle also argues that the trial court penalized him for his lack of remorse, which was a result of his assertion of innocence. This claim is not supported by the special verdict and is wholly without merit.

## VIII. *Consecutive Sentences*

 Finally, Runningeagle argues that because he could not have committed the murders without also committing the burglary, and because the burglary exposed the victims to no additional risk of harm than that inherent in the murder, the trial court erred in ordering the burglary sentence to be served consecutively to the sentences imposed for murder.

 Relying on *State v. Schaaf*, 169 Ariz. 323, 819 P.2d 909 (1991), the state argues that the court does not have jurisdiction to consider this issue because Runningeagle's automatic notice of appeal from the death sentence was not accompanied by a separate notice of appeal from the judgment on the other counts. We reject the state's argument for two reasons.

In *Schaaf*, the court advised the defendant he would have to file a timely notice of appeal from the convictions on the non-death counts. The court did not do so here. Moreover, the clerk's notice of appeal was from the judgment and sentence "entered in the Superior Court, Maricopa County, on 2/3/89." The judgment included the death penalty convictions and the convictions for the other crimes for which Runningeagle was charged.

The jury verdicts for first degree murder did not indicate whether Runningeagle was convicted of first degree murder on the theory of premeditation or felony murder. In either case, the trial court did not err in ordering that the sentences for murder and burglary be served consecutively. A.R.S. § 13–116 provides that "[a]n act or omis-

sion which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."

A three part test is applied to determine whether A.R.S. § 13–116 has been followed. The first prong is the identical elements test, applied by subtracting from the factual transaction the evidence supporting the elements of the ultimate conviction and then determining whether the remaining evidence supports the elements of the other crime. If the remaining evidence satisfies the elements of the other crime, then consecutive sentences are not prohibited by A.R.S. § 13–116. *State v. Gordon,* 161 Ariz. 308, 315, 778 P.2d 1204, 1211 (1989). The second prong considers "whether, given the entire 'transaction,' it was factually impossible to commit the ultimate crime without also committing the secondary crime." *Id.* Finally, if it was factually impossible to commit the ultimate crime without also committing the secondary crime, the court will then consider "whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime." If so, then consecutive sentences are proper. *Id.*

The elements of burglary as charged were that Runningeagle entered or remained in the Williams household without authority and with intent to commit a theft, and that he was armed. The elements of first degree murder as charged were that Runningeagle knowingly caused the death of the victims with premeditation, or that he committed or attempted to commit the crime of burglary (in the first, second, or third degree) and in the course and furtherance thereof, or in immediate flight therefrom, caused the death of the victims.

If the jury relied on the premeditation theory, after subtracting evidence of murder, sufficient evidence remains to satisfy the elements of burglary. Under the second prong, it was factually possible to burglarize both the Davises and the Williams without killing the Williams just as it was possible to kill the Williams without committing either burglary. Finally, Runnin-

geagle's conduct in committing the burglary caused the victims to suffer an additional risk beyond that inherent in the killing: one crime presented a risk to property, the other presented a risk to life. Therefore, consecutive sentences are not prohibited by § 13–116.

The result does not change if the jury relied on the felony murder theory. *See State v. Walton,* 159 Ariz. 571, 769 P.2d 1017 (1989), *aff'd* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (no error where defendant was sentenced to concurrent terms for robbery, kidnapping and theft convictions to run consecutively to the death penalty for first degree murder, where jury did not indicate which theory supported first degree murder); *State v. Vaughn,* 147 Ariz. 28, 30–31, 708 P.2d 453, 455–56 (1985) ("A.R.S. § 13–116 is not violated by the consecutive sentences for first degree [felony] murder and armed robbery"); *State v. Girdler,* 138 Ariz. 482, 675 P.2d 1301 (1983), *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984) (consecutive sentences for felony murder and arson are not in violation of A.R.S. § 13–116); *and State v. Clayton,* 109 Ariz. 587, 514 P.2d 720 (1973) (A.R.S. § 13–1641, predecessor of A.R.S. § 13–116, is not violated where defendant is convicted of both burglary and felony murder). The trial court did not err in imposing consecutive sentences for first degree murder and burglary.

## TILDEN

### I. *Requested Manslaughter Instruction*

 Tilden claims that the trial court erred by refusing to give his requested instruction on manslaughter as a lesser included offense of murder in the first degree, arguing that the jury could have found that Tilden or Runningeagle either recklessly caused Mr. Williams' death or committed second degree murder upon a sudden quarrel resulting from provocation under A.R.S. § 13–1103(A).

 Runningeagle and Tilden broke through the Williams front door with a tire iron, barged into their home, and killed Mr.

Williams by inflicting several head wounds and five stab wounds. There is no evidence to support a reckless manslaughter instruction. Nor does the confrontation between Mr. Williams and Tilden and Runningeagle, during which Mr. Williams yelled at the two to leave or he would call the police, support a manslaughter instruction on the basis of a "sudden quarrel." Words alone are not adequate provocation to justify a manslaughter instruction. *State v. Doss*, 116 Ariz. 156, 568 P.2d 1054 (1977). The trial court did not err when it determined that a manslaughter instruction was not supported by the evidence.

## II. *Motion to Sever*

▮▮▮ Tilden argues that the trial court erred by denying his motion to sever his case from Runningeagle's. He claims that he was prejudiced because the evidence against Runningeagle was stronger than the evidence against him and because their defenses were antagonistic to each other.

Severance is required when necessary to promote a fair determination of guilt. Rule 13.4, Ariz.R.Crim.P. *State v. Cruz*, 137 Ariz. 541, 543, 672 P.2d 470, 472 (1983).

Tilden was not prejudiced by the fact that the evidence against Runningeagle was stronger than the evidence against him. To be sure, the fingerprint and shoe print evidence in this case was stronger against Runningeagle, but there was also substantial evidence of Tilden's guilt. The morning after the murders, Tilden stated that "[w]e got in a good fight last night." Orva Antone testified that Tilden was present at the Williams house, and that he struck Mrs. Williams on the head with the flashlight. Antone's testimony is supported by the blunt force injuries to Mrs. Williams' head. The shoe print expert stated that although she could not identify or exclude Tilden's shoes as having made one of the prints at the Williams, the inked print made from his shoes was "similar" to those in the photographs of the scene.

Moreover, Tilden was charged as a principal and as Runningeagle's accomplice. Thus, even if severed, the evidence against

Runningeagle would have been admitted at Tilden's trial. The court did not abuse its discretion in denying the motion to sever. *See State v. Sustaita*, 119 Ariz. 583, 588–89, 583 P.2d 239, 244–45 (1978).

Furthermore, the risk that any of the evidence against Runningeagle "rubbed off" on Tilden was minimized by an instruction that "[e]ach defendant is entitled to have his guilt or innocence as to each of the crimes charged determined from his own conduct and from the evidence which applies to him if he were being tried alone." *See Zafiro v. United States*, — U.S. —, —, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993) (limiting instruction will often cure risk of prejudice in joint trial). We recognize that there could be instances where a curative instruction may be inadequate, but this case is not one of them. The issues confronting the jury were relatively simple, and the disparity in the weight of evidence against the defendants was not great enough to deny Tilden a fair trial.

Tilden's reliance upon *State v. Kinkade*, 140 Ariz. 91, 93, 680 P.2d 801, 803 (1984) is misplaced. The jury did not convict Tilden of the burglary of the Davis car, and, thus, had no trouble allocating evidence between defendants. Nor was the case against him based largely on the accusation of the other defendant. Runningeagle did not accuse Tilden of committing the offense.

Finally, Tilden's "alibi of non-presence" defense is not antagonistic to Runningeagle's "insufficiency of state's evidence" defense. In *State v. Cruz*, 137 Ariz. at 545, 672 P.2d at 474, this court held that:

> a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant.

*See Zafiro v. United States,* — U.S. —, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (holding that mutually antagonistic defenses are not prejudicial *per se* ). Tilden claimed that he was not guilty because he was at home on the morning of the murder. Runningeagle argued that the state's evidence was insufficient to convict him. The defenses are unrelated. The jury could have believed both, one, the other, or neither. The court did not err in denying the motion to sever.

### III. *Shoe Comparison Testimony*

Tilden argues that the trial court erred in admitting expert shoe print comparison testimony on Tilden's shoes and prints found at the scene of the murder. He argues specifically that the state failed to show that shoe print comparisons have been recognized and have gained general acceptance in any field of science. This argument is foreclosed by *State v. Coleman,* 122 Ariz. 99, 593 P.2d 653 (1979) and *State v. Kelly,* 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied,* 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975).

Tilden also argues that the state's shoe print witness was not qualified to testify as an expert. But the witness, Ms. Inta Meya, had spent over five years in the comparative analysis section of the City of Phoenix Police Department crime laboratory. She was trained by the senior criminalists, had studied all available literature in the area of footprint comparison, and had analyzed over fifty shoe prints and impressions while at the laboratory. The court did not abuse its discretion in allowing this expert to testify. Rule 702, Ariz.R.Evid.

Tilden next contends that the expert testimony did not assist the trier of fact and argues that the jury could have made its own comparison of the photographs from the crime scene and the defendant's shoes. Shoe print comparisons are hardly ordinary and are quite beyond common experience. Given the nature of the evidence, the various examinations of shoe orientation, and class comparisons, it is hard to imagine that Ms. Meya's opinion could not have helped the jury. Although she could not conclude that Tilden's shoe made the print, she did opine that the shoe and the print were similar and that she could not exclude the shoe as having made the print.

Tilden next argues that the shoe print comparison testimony was not relevant. Evidence is relevant if it has any tendency to make the existence of any material fact more or less probable. Rule 401, Ariz.R.Evid. The similarity of the pattern on the soles of Tilden's shoes to the partial bloody shoe prints at the scene had a tendency to make his presence more probable. The evidence was relevant.

Finally, Tilden contends that the probative value of the shoe print evidence was substantially outweighed by its unfairly prejudicial effect under Rule 403, Ariz. R.Evid. Tilden fails to point to any specific prejudicial effect. Thus, there was nothing to weigh against probative value. The trial court did not err.

### DISPOSITION

We have examined the record for fundamental error as required by A.R.S. § 13–4035 and find none. We therefore affirm Runningeagle's and Tilden's convictions and sentences.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.