IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,                    )
                                         )    2 CA-CR 2003-0021-PR
                    Respondent,          )    DEPARTMENT B
                                         )
         v.                              )    O P I N I O N
                                         )
RODNEY GEORGE JACKSON,                   )
                                         )
                    Petitioner.          )
                                         )

PETITION FOR REVIEW FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-29617

Honorable Nanette M. Warner, Judge

REVIEW GRANTED; RELIEF DENIED

Vincent J. Frey                                              Tucson
                                              Attorney for Petitioner

E S P I N O S A, Judge.

¶1          In 1990, petitioner Rodney Jackson was convicted after a jury trial of two counts of sexual abuse of a person under the age of fifteen years, one count of child molestation, one count of sexual conduct with a person under the age of fifteen years, and two counts of attempted sexual conduct with a person under the age of fifteen years. He was sentenced to consecutive, mitigated and presumptive prison terms totaling forty-two years, to be followed by two, five-year probationary terms. On appeal, we affirmed his convictions and sentences,

modifying one prison sentence to incorporate credit for presentence incarceration. *State v. Jackson*, 170 Ariz. 89, 821 P.2d 1374 (App. 1991). In 2002, Jackson filed his first petition for post-conviction relief pursuant to Rule 32, Ariz. R. Crim. P., 17 A.R.S., raising claims of ineffective assistance of trial and appellate counsel regarding potential plea offers and asserting he was entitled to relief based on significant changes in the law.[1] This petition for review of some of those claims follows the trial court's denial of relief without a hearing. We will not disturb a trial court's ruling on a petition for post-conviction relief absent an abuse of discretion. *State v. Watton*, 164 Ariz. 323, 793 P.2d 80 (1990). We find none here.

## Standard of Review

¶2        To state a colorable claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objectively reasonable standards and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985). If a defendant fails to make a sufficient showing on either prong of the *Strickland* test, the court need not determine whether the other prong was satisfied. *State v. Salazar*, 146 Ariz. 540, 707 P.2d 944 (1985). A colorable claim of post-conviction relief is "one that, if the allegations are true, might have changed the outcome." *State v. Runningeagle*, 176 Ariz. 59, 63, 859 P.2d 169, 173 (1993).

---

[1]The petition is not time barred. Supreme Court Order, 171 Ariz. XLIV (1992) (Rule 32 filing deadlines inapplicable to a defendant sentenced before September 30, 1992, who files his or her first petition for post-conviction relief); *see Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).

**Discussion**

¶3 Jackson argues, as he did below, that trial counsel was ineffective in failing to explore the possibility of a plea offer in the case. The trial court found this claim precluded because it had been raised and finally adjudicated on appeal. *See* Ariz. R. Crim. P. 32.2(a)(2); *Jackson*, 170 Ariz. at 91, 821 P.2d at 1376 ("Appellant's first argument is that his trial counsel was ineffective because he did not seek a plea bargain."). We are reluctant to agree, for two reasons. First, in a related argument, Jackson contends that appellate counsel was ineffective for raising the claim on appeal instead of in post-conviction relief proceedings, where a better record could have been made. Jackson has a constitutional right to effective assistance of counsel on appeal, and ineffective assistance of appellate counsel is a cognizable Rule 32 claim. *State v. Herrera*, 183 Ariz. 642, 905 P.2d 1377 (App. 1995). Second, Jackson couched another variation of this claim, addressed below, in a form that is not subject to preclusion. Accordingly, we address the claim on the merits.

¶4 Jackson's plea-related ineffective-assistance-of-counsel claim is based on *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193 (App. 2000), which, he asserted below, is a significant change in the law and therefore insulated from the preclusion rules. *See* Ariz. R. Crim. P. 32.1(g) and 32.2(b) (significant change in the law claims raised under Rule 32.1(g) excepted from preclusion). In *Donald*, Division One of this court determined that a defendant's rejection of a favorable plea agreement offered by the state due to trial counsel's failure to give accurate advice about the relative merits and risks of the agreement compared to going to trial could establish a constitutionally significant injury upon a defendant that merits post-conviction relief via a claim of ineffective assistance of trial counsel, notwithstanding that a

3

fair trial subsequently occurred. The *Donald* court further found that the remedy for such an injury can include a court-ordered reinstatement of the original plea agreement. Assuming, without deciding, that *Donald* was correctly decided and is a significant change in the law under Rule 32.1(g), Jackson's claim fails because he did not raise a colorable *Donald* claim.

¶5 The primary suggestion that the state ever had offered Jackson a plea agreement came through Jackson's affidavit, attached to the Rule 32 petition, in which he claimed that the first time he had spoken with trial counsel at the jail, counsel had informed him the state was offering a plea agreement that would require him to serve fifteen to thirty years in prison. According to the petition for post-conviction relief and Jackson's affidavit, Jackson elected to go to trial because the alleged victim had recanted her accusations. But the victim then recanted her recantation the day before trial and indicated that she would testify against Jackson. Jackson argues, as he did below, that trial counsel was ineffective by failing to reinitiate plea negotiations at that point, when his trial prospects had turned for the worse. Indeed, at the sentencing hearing, counsel lamented that he had been "preoccupied with getting ready for trial" at that juncture and regretted not "discuss[ing] a possible plea offer being reopened." In the same discourse, counsel also mentioned that the prosecutor had been willing to discuss plea negotiations but that counsel had not responded, and that he had "lost some sleep about that."

¶6 "'[C]riminal defendants have no constitutional right to a plea agreement and the state is not required to offer one.'" *State v. Secord*, 207 Ariz. 517, ¶ 6, 88 P.3d 587, 590 (App. 2004), *quoting State v. McKinney*, 185 Ariz. 567, 575, 917 P.2d 1214, 1222 (1996). But, according to *Donald*, "once the State engages in plea bargaining, the defendant has a Sixth

4

Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer." 198 Ariz. 406, ¶ 14, 10 P.3d at 1200. Jackson's *Donald* claim is based on his assertion, supported by his affidavit, that the state had engaged in plea bargaining prior to trial. The trial court dismissed this assertion, describing Jackson's affidavit as "self-serving" and finding that "there is nothing to indicate that a plea offer ever existed." But there *was* something to indicate an offer had existed: Jackson's sworn statement in his affidavit and defense counsel's statements at sentencing. We agree with Jackson that the trial court should not have summarily rejected this claim on this basis.[2] In determining whether Jackson's claim was colorable, the trial court was obligated to treat his factual allegations as true. *Runningeagle*. That Jackson's factual allegations were self-serving is neither surprising nor relevant.

¶7        However, even accepting as true Jackson's assertion that the state had offered him a plea agreement early on in the proceedings, we do not agree the *Donald* claim he ultimately made was colorable. Jackson did not argue, as did the defendant in *Donald*, that his

---

[2]The trial court's ruling was not groundless; there is nothing in the record suggesting any such plea offer *except* Jackson's affidavit, made over twelve years after the purported offer, and defense counsel's oblique reference at sentencing to the possibility of an offer being "reopened." When we addressed the ineffective assistance of trial counsel issue on appeal, we stated, "[t]he [appellate] record does not indicate that the state ever offered a plea agreement." *Jackson*, 170 Ariz. at 91, 821 P.2d at 1376. And Jackson's claim on appeal was that trial counsel "did not seek a plea bargain," *id.*, an argument that would only make sense in the absence of a plea offer. Rule 32 counsel attached an affidavit stating he had interviewed Jackson's trial counsel as well as the former prosecutor, neither of whom recalled any plea offers in the case. That affidavit also relayed a comment from the former prosecutor suggesting the possibility that the Pima County Attorney's case file might contain notes regarding plea offers authorized or extended. When the deputy county attorney responded to the petition, she flatly stated, "The State never offered Defendant a plea agreement." In his reply, Jackson responded that this was "a fact which is not disputed."

attorney had failed to accurately convey the positive and negative aspects of entering into a plea agreement the state had offered rather than proceeding with a trial and that he is therefore entitled to reinstatement of that plea offer. In fact, Jackson concedes, at least implicitly, that he knowingly and intelligently rejected any such plea offer and instead proceeded to trial because the victim had recanted. Jackson claims he is entitled to post-conviction relief under *Donald* because of his attorney's alleged ineffectiveness in failing to resume plea negotiations on the eve of trial, after it became apparent that the victim would in fact testify against him. The relief he sought below was an evidentiary hearing to determine whether "any plea offers . . . may have been available if defense counsel had followed-up on the . . . plea bargaining." We do not believe the *Donald* rationale, assuming it is sound, can be extended beyond plea agreements actually offered by the state.

¶8          The more difficult problem faced by the *Donald* court was not whether the defendant there had raised a colorable claim that his attorney had rendered ineffective assistance under the *Strickland* standards, but whether there was an available remedy. "[T]he remedy for a violation of the Sixth Amendment right to counsel 'should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *Donald*, 198 Ariz. 406, ¶ 31, 10 P.3d at 1202, *quoting United States v. Morrison*, 449 U.S. 361, 364, 101 S. Ct. 665, 668, 66 L. Ed. 2d 564, 568 (1981). The majority in *Donald* implicitly found that the most narrowly tailored remedy for a successful *Donald* claim is a reinstatement of the plea offer. *See Donald*, 198 Ariz. 406, ¶ 42, 10 P.3d at 1204 ("A court's essential function is to provide a remedy in the context of an individual case, and a restoration of the parties to their original position is a remedy well established in

other contexts."). The *Donald* majority acknowledged the separation of powers issues inherent in a court-ordered reinstatement of a previously offered and rejected plea agreement but nonetheless concluded that such a remedy was constitutionally permissible. The dissenting judge in *Donald* found the separation of powers provision in article III of the Arizona Constitution prevents the judicial branch from usurping the executive branch's power to offer plea agreements, but noted that other, alternative remedies might be available.

**¶9**     We reject Jackson's attempt to extend the *Donald* rationale to potential plea agreements that were never actually offered and the terms of which are unknown. Such an extension of *Donald* would advance the courts even further into the province of the executive branch, well past the already tenuous line drawn in *Donald*, and would do so before a constitutional violation is even proven. The relief Jackson sought—an evidentiary hearing prior to which the prosecutor's trial file would be ordered to help determine what, if any, plea offers the prosecutor would have been willing to extend at the outset of trial—was essentially a discovery procedure through which Jackson sought to establish a colorable claim of ineffective assistance of counsel.[3] Absent a colorable allegation that a specific plea agreement would have been extended to Jackson had his attorney inquired into the matter just before trial and that Jackson would have entered into such an agreement, Jackson could not have established he had been prejudiced. When, as here, the state does not concede that it would have offered a specific plea agreement upon defense counsel's request, the trial court would

---

[3]Jackson did not demonstrate that he had exhausted all other means of discovering whether any such information existed in the state's file, such as contacting the prosecutor's office directly.

be required to speculate, in a factual vacuum, about the terms of any such agreement. *See* Ariz. R. Crim. P. 32.8; *Herrera* (trial court is finder of fact in a Rule 32 evidentiary hearing). It is one thing for a trial court, as a remedy for a constitutional violation, to order the reinstatement of a plea that was once offered by the state; it is quite a different thing for a trial court to hypothesize on what, if any, plea offer the state might have been willing to make at a particular point in a criminal case in order to determine whether a constitutional violation has even occurred and then to order the state to offer that plea agreement for the first time. As the court in *Donald* stated:

> We do not hold that a court, when it pleases, may order the State to offer a plea agreement entirely of the court's concoction. Such a holding would surely violate separation of powers. It is altogether different, however, to hold that a court has remedial power, in order to redress a denial of effective assistance in plea bargaining, to return the parties to the status quo ante by ordering the State to reinstate an offer that the State had earlier considered and approved.

198 Ariz. 406, ¶ 40, 10 P.3d at 1204.

¶10     Simply put, it is neither possible nor appropriate for a trial court to divine the terms of a previously unoffered plea agreement in order to determine the merits of a speculative claim of ineffective assistance of counsel in the plea bargaining process. Particularly in a case this old, any such exercise would be fraught with speculation and would unreasonably and unrealistically tax people's memories. More importantly, any such action would put the court in the prosecutor's shoes and be an impermissible encroachment upon the executive branch of government. The power to offer a plea agreement rests exclusively with the prosecuting body. *See State v. Larson*, 159 Ariz. 14, 764 P.2d 749 (1988); *see also*

8

*Russell v. Collins*, 998 F.2d 1287 (5th Cir. 1993) (prosecutor has discretion to plea bargain with some defendants and not with others); *State v. Morse*, 127 Ariz. 25, 617 P.2d 1141 (1980) (decision to terminate plea negotiations lies with prosecutor's office, not trial judge); *cf. Secord*. Moreover, the possibility of any such court intrusion into the prosecutor's realm might chill the state from entering into plea negotiations in the first place, which would be contrary to public policy. *See Watton*.

**Conclusion**

¶11    Even assuming Jackson's factual assertions to be true, he failed to raise a colorable claim of ineffective assistance of counsel under the parameters set forth in *Donald*.[4] The constitutional principles underlying *Donald* come into play only when a concrete plea offer has been made by the state, and we decline Jackson's request, unsupported by authority, to extend *Donald*'s reach to include a defense counsel's failure to investigate the speculative possibilities of a potential plea offer, the very existence of which is contested.[5] *See Donald*,

---

[4]Jackson suggested below that, as an alternative remedy under *Donald*, he should be entitled to a new trial. Because Jackson did not make a colorable claim of ineffective assistance of counsel under *Donald* and was therefore not entitled to the basic *Donald* remedy of reinstating a plea agreement, he cannot have been entitled to an alternative remedy of a new trial.

[5]Although not cited by Jackson, we have found one case in which a court found counsel ineffective for failing to seek a plea agreement. In *Wayrynen v. Class*, 586 N.W.2d 499 (S.D. 1998), a client who contemplated confessing and pleading guilty to her crimes went to an attorney for advice. The attorney disclosed the client's name to the authorities, did not inform the client of the prison exposure she faced if convicted, then, without seeking any concessions from the state, facilitated the client's confessing to the crimes and pleading guilty to most of the resulting charges, for which she received a seventy-five-year prison sentence. The prosecutor later conceded she would have been willing to negotiate charge reductions had the attorney broached the subject. The court held that the attorney's "failure to seek a plea agreement prior to the confession, *under these circumstances*, constitutes ineffective

9

198 Ariz. 406, n.4, 10 P.3d 1193, n.4 (listing numerous, similar cases from other jurisdictions, all involving actual plea offers).

¶12        Jackson attempted to raise a *Donald* claim based on far more speculative grounds than those on which *Donald* had been based, and we find his claim was therefore not colorable. As the trial court found, *Donald* does not address "any duty to investigate the existence of an offer."[6] Furthermore, that a plea offer might have been made and rejected at the initial stages of this criminal prosecution is immaterial. No evidentiary hearing was required to establish the truth of Jackson's claim that the state had offered any such plea agreement, because that agreement was not at issue; Jackson did not claim counsel was ineffective regarding that purported offer or seek its specific enforcement as a remedy. Jackson did not raise a colorable claim of ineffective assistance of counsel because even if we assume his assertions to be true—that the state might have been willing to offer him a favorable plea agreement at the outset of trial if trial counsel had broached the topic with the prosecutor—those assertions would not have entitled him to post-conviction relief under

---

assistance of counsel." 586 N.W.2d at 503 (emphasis added). *Wayrynen* is thus limited to its unique facts, most notably a lawyer representing a client who intends to confess and plead guilty; it contains no discussion about an appropriate remedy. Accordingly, we do not find the case persuasive here. We also do not reach the broader question of whether a defendant can ever establish an ineffective-assistance-of-counsel claim predicated on counsel's failure to seek a plea agreement when, unlike here, the defendant can show prejudice.

[6]Our analysis has necessarily entailed a detailed examination of *Donald*, but nothing in this decision should be read to mean this court adopts or approves of *Donald* or that we considered that case to be a significant change in the law for purposes of Rule 32.1(g). Because we find that Jackson's asserted claim is not encompassed by *Donald*, we need not answer those questions.

10

*Donald*. And Jackson has no other authority supporting his claim. Accordingly, we conclude that the trial court did not abuse its discretion in denying relief on this claim without a hearing.

¶13    Although we grant the petition for review, we deny relief.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

_____
PETER J. ECKERSTROM, Judge