NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

JAVIER ANGEL AGUAYO, *Petitioner*.

No. 1 CA-CR 23-0405 PRPC

FILED 02-27-2025

Petition for Review from the Superior Court in Maricopa County
No. CR2012-115872-001
CR2013-428986-001
The Honorable Pamela S. Gates, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Quinton S. Gregory
*Counsel for Respondent*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Petitioner*

---

## MEMORANDUM DECISION

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge David D. Weinzweig joined.

---

**C A T L E T T**, Judge:

**¶1** Javier Angel Aguayo ("Aguayo") seeks review of the superior court's dismissal of his Rule 32 petition for post-conviction relief ("PCR"). Aguayo claims trial counsel rendered ineffective assistance of counsel during plea negotiations. Because the superior court did not abuse its discretion in dismissing Aguayo's petition, we grant review but deny relief.

## FACTS AND PROCEDURAL HISTORY

**¶2** During a road rage incident, Aguayo pointed a gun at Paul and Tara (we use pseudonyms to protect victim confidentiality). Shortly after, police arrested Aguayo. After posting bail, Aguayo went to Tara's home and shot her multiple times as she pulled out of the driveway. She survived and identified Aguayo as the shooter. Officers also used ballistic evidence, cell tower data, and cell phone records to link Aguayo to the shooting. Once in custody, Aguayo offered a fellow inmate $10,000 to kill Tara, providing her location and identifying information. The inmate eventually reported Aguayo.

**¶3** A jury found Aguayo guilty of aggravated assault, disorderly conduct, attempted first-degree murder, and conspiracy to commit first-degree murder. The superior court sentenced Aguayo to 7.5 and 2.25 years in prison for aggravated assault and disorderly conduct, with the terms to run concurrently. The court sentenced Aguayo to 25 years in prison for attempted first-degree murder and life imprisonment without the possibility of "parole" for 25 years for conspiracy to commit first-degree murder, with those terms to runs consecutively.

**¶4** Aguayo appealed his convictions, challenging the validity of search warrant affidavits and denial of his motions to suppress. *See State v. Aguayo*, 1 CA-CR 16-0736, 2018 WL 1721035, at *2–7, ¶¶ 10–35 (Ariz. App. Apr. 10, 2018). This court modified Aguayo's term of life imprisonment but otherwise affirmed. *Id*. at *7 ¶ 36 (citing A.R.S. § 13–1003(D)).

¶5         Aguayo petitioned for PCR, arguing trial counsel's deficient performance prevented him from making an informed decision regarding a potential plea offer.[1]  The State argued Aguayo's claim failed because the State never offered a plea, and Aguayo would not have accepted an offer even if one existed.  The superior court agreed with the State and summarily dismissed the PCR proceeding.  Aguayo timely petitioned for review.

## DISCUSSION

¶6         Aguayo argues the superior court erred by summarily dismissing the PCR proceeding.  He argues the court, instead, should have held an evidentiary hearing.  We review the court's summary dismissal of a petition for PCR for an abuse of discretion.  *State v. Bennett*, 213 Ariz. 562, 566 ¶ 17 (2006).  The superior court should hold an evidentiary hearing when a PCR petition has "alleged facts which, if true, would probably have changed the verdict or sentence."  *State v. Amaral*, 239 Ariz. 217, 220 ¶ 11 (2016) (emphasis omitted).  On the other hand, summary dismissal is appropriate when a PCR petition presents no "material issue of fact or law that would entitle the defendant to relief."  Ariz. R. Crim. P. 32.11(a).

¶7         "Although a defendant has the right to effective assistance of counsel in deciding whether . . . to accept a plea offer, defendants do not have a constitutional right to a plea bargain."  *State v. Anderson*, 257 Ariz. 199, ___ ¶ 23 (2024) (cleaned up).  "But once the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer."  *State v. Donald*, 198 Ariz. 406, 413 ¶ 14 (App. 2000).  A defendant alleging ineffective assistance of counsel during plea negotiations is only entitled to an evidentiary hearing if he makes "more than a conclusory assertion that counsel failed to adequately communicate the plea offer or the consequences of conviction."  *Id*. at ¶ 17.  To make such a showing, the defendant must first establish that the State made a "concrete plea offer." *State v. Jackson*, 209 Ariz. 13, 16–17, ¶¶ 7–11 (App. 2004); *see also State v. Vallejo*, 215 Ariz. 193, 195 ¶ 7 (App. 2007) (refusing, like *Jackson*, to extend *Donald* to a "nonexistent plea offer").

¶8         Here, the superior court conducted four settlement conferences before trial.  The court explained to Aguayo that "there's a possibility that you could win.  But there's a huge chance and I think a

---

[1]     Aguayo also argued appellate counsel was ineffective, but he does not raise that issue on review, so it is waived.  *See* Ariz. R. Crim. P. 32.16(c)(4).

greater chance that you're going to be convicted." The State and the court informed Aguayo that he was facing somewhere between 25 and 95 years in prison, there was a strong possibility he would receive consecutive sentences, and he could be sentenced to life in prison. Aguayo's counsel avowed that they had discussed the evidence, including the strengths and weaknesses of the State's case, with him. On multiple occasions, the State confirmed that it had not extended a formal plea offer but Aguayo could submit his own proposal. The court, therefore, urged Aguayo to propose a "realistic" plea offer to avoid spending "the rest of [his] life" in prison.

¶9 At the first settlement conference, Aguayo confirmed he understood the consequences of losing at trial, but he had not seriously contemplated plea negotiations because he had a strong defense and did not deserve incarceration. He proclaimed his innocence and criticized the State's case. Aguayo proposed a range of stipulated sentences between 7 and 13 years in prison, but he expressed little interest in a plea agreement.

¶10 The record shows that trial counsel repeatedly tried to engage in plea negotiations, informed Aguayo of the State's evidence, and conveyed that he could spend his life in prison. Aguayo has not shown that counsel performed deficiently. *See Donald*, 198 Ariz. at 413 ¶¶ 17.

¶11 As to prejudice, Aguayo's PCR petition did not make "a colorable allegation that a specific plea agreement would have been extended[.]" *Jackson*, 209 Ariz. at 17 ¶ 9. Neither Aguayo's PCR petition nor the evidence attached to it created a material issue of fact about the existence of a concrete plea offer from the State. Instead, although the State said it would consider a proposal from Aguayo, the record shows that the State never extended a plea offer. Without showing a "concrete plea offer," Aguayo cannot argue that deficient advice caused him to reject a plea offer or otherwise resulted in prejudice, and he therefore was not entitled to an evidentiary hearing. *Id*. at ¶¶ 9, 11.

¶12 Aguayo also failed to make a colorable allegation that he would have accepted a plea offer had the State extended one. Throughout the settlement conferences, Aguayo maintained his desire to stand trial, characterized the State's case as weak, and argued his conduct did not warrant a lengthy prison term. The parties ensured he understood the State's evidence and the possibility of life imprisonment after trial, but Aguayo remained steadfast. Aguayo repeatedly refused to make a plea proposal for anywhere near the amount of prison time he now claims he would have accepted. For example, at the final settlement conference, the court asked Aguayo if he would consider making a plea proposal closer to

20 years in prison. Aguayo responded, "I understand that the odds are against me, but as far as what I did or didn't do, I'm not taking 20 years" and "I understand the situation I'm in . . . but I'm not a quitter." Aguayo then rejected the court's proposal that he offer 18 years. Although Aguayo now claims he would have accepted a 20-year sentence, he repeatedly refused to offer 20 years in prison or anything close, and so he cannot allege prejudice. *See id.* at 16–17 ¶ 9.

¶13        During the settlement conferences, the parties miscalculated Aguayo's sentencing exposure for attempted first-degree murder based on applicable enhancements. *See* A.R.S. §§ 13-704(F)(1) (second-time dangerous offenses), -708(A) (requiring "flat time" for dangerous offenses committed on release), -708(D) (requiring two additional years' imprisonment for felony offenses committed on release). But Aguayo did not make a colorable allegation that the inaccuracy impacted his decision to risk trial. Aguayo knew he faced a term of life imprisonment, and he understood the "odds" of conviction, yet he remained resistant to the court's suggestions about a plea offer. Moreover, without the State making a concrete plea offer, Aguayo cannot show that a miscalculation as to one count resulted in prejudice. *See Jackson*, 209 Ariz. at 17 ¶¶ 9, 11.

¶14        We have declined "to extend the *Donald* rationale to potential plea agreements that were never actually offered and the terms of which are unknown." *Id.* at 16 ¶ 9. As such, the superior court could not find ineffective assistance for counsel's failure to properly inform him of the benefits of entering a plea agreement that was never offered, and Aguayo could not make a colorable claim of ineffective assistance of counsel. The superior court did not abuse its discretion.

## CONCLUSION

¶15        We grant review but deny relief.

