922 P.2d 301

The STATE of Arizona, Appellee,

v.

Melinda VAN WINKLE, Appellant.

No. CR 95–0120 PR.

Supreme Court of Arizona, En Banc.

Aug. 13, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Division, and Diane M. Ramsey, Assistant Attorney General, Phoenix, and Eric J. Olsson, Assistant Attorney General, Tucson, for Appellee.

Isabel G. Garcia de Romo, Pima County Legal Defender by Robb P. Holmes, Deputy Legal Defender, Tucson, and Kathleen C. DuBois, Deputy Legal Defender (former), for Appellant.

RUTH McGREGOR, Judge.*

Appellant Melinda Van Winkle and her former husband, Gary Virgil Coffman, Sr.,

---

\* Justice Robert J. Corcoran (Retired) did not participate in the determination of this matter. Ruth V. McGregor, Judge of the Arizona Court of Appeals, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article VI, § 3 of the Arizona Constitution.

were indicted and tried jointly on multiple counts of sexual crimes against children. We granted review to consider whether the trial court abused its discretion in failing to sever Van Winkle's trial from that of Coffman. We have jurisdiction pursuant to Arizona Revised Statutes Annotated § 12–120.24.

## I.

Van Winkle and Coffman met as neighbors in Kentucky while married to other individuals. Coffman lived with his wife Kristine, her son B and daughter C, and the Coffmans' son, R. After Van Winkle divorced her husband, she and her daughter lived with the Coffmans. Van Winkle and Coffman later became sexually involved. In 1985, Van Winkle, her daughter, and the Coffman family moved to Tucson, where they lived in a car at a Tucson campground for several months and then in a series of apartments over the next few years. Coffman eventually divorced Kristine and married Van Winkle. After they also divorced, Van Winkle remarried and lived again in Kentucky until her extradition to Arizona in connection with these charges.

In 1992, B notified Tucson police that Coffman had sexually abused him since childhood. An investigation uncovered similar allegations against Coffman by C and allegations by R against both Coffman and Van Winkle. A grand jury indicted Coffman and Van Winkle on thirty-nine counts of sexual abuse of children, twenty-four involving Coffman and fifteen involving Van Winkle. Of the charges levelled against Van Winkle, fourteen involved R and one involved B. None of the counts against Van Winkle involved C.

Van Winkle twice moved to sever her trial from Coffman's, once prior to trial and again after C, the first witness, testified. The trial court denied each motion.

During the trial, each of the children testified in detail about Coffman's abuse. C testified that Coffman had fondled her genitals and had directed her to engage in sexual activity with B while Coffman, dressed in women's clothing, watched. C stated that she had witnessed Coffman force B to engage in oral sex and to use a dildo on him. C did not testify to any abuse by Van Winkle.

B confirmed C's testimony about incidents involving him and described numerous additional incidents of sexual abuse by Coffman, including oral and anal sex. B recounted that Coffman had forced him to participate in a "chain of love" in which B had intercourse with his mother, Kristine, who was unconscious, while Coffman simultaneously had anal intercourse with B. In connection with the count involving Van Winkle, B testified that, on one occasion, Coffman and Van Winkle had sexual intercourse in his presence.

R testified that Coffman had forced him to engage in oral and anal sex and to use a dildo on him. R further testified that Coffman had directed him to have intercourse and oral sex with Van Winkle while Coffman watched. R described an "orgy" with Coffman and Van Winkle that matched B's description of the "chain of love." R also stated that Van Winkle had fondled his genitals and had forced him to touch her genitals and to engage in oral sex.

The jury convicted Coffman on each of the charged counts and, pursuant to mandatory sentencing guidelines, the trial court sentenced him to 645 years. The jury acquitted Van Winkle of the charge involving B, but convicted her on the remaining counts. The trial court sentenced her to 425 years.

The court of appeals affirmed Van Winkle's convictions and sentences by memorandum decision, concluding that the trial court did not abuse its discretion in refusing to sever the trials because the joint trial was judicially economical and did not prejudice Van Winkle. For the reasons stated below, we vacate the decision of the court of appeals and remand for a new trial.

## II.

Defendants may be tried jointly "when each defendant is charged with each offense included, or when the several offenses are part of a common conspiracy, scheme or plan or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others." Ariz.R.Crim.P. 13.3.b. However, upon mo-

tion of a party, the court must sever an otherwise properly joined trial when "necessary to promote a fair determination of the guilt or innocence of any defendant of any offense...." Ariz.R.Crim.P. 13.4.a. Nevertheless, "[a]lthough there is some possibility of confusion in a joint trial, in the interest of judicial economy, joint trials are the rule rather than the exception." *State v. Murray*, 184 Ariz. 9, 25, 906 P.2d 542, 558 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2535, 135 L.Ed.2d 1057 (1996).

■ Van Winkle contends that the inflammatory and reprehensible nature of Coffman's conduct affected the jury's evaluation of her. Therefore, Van Winkle argues, the trial court should have severed the trials to avoid "rub-off" or "spill-over," which occurs when "the jury's unfavorable impression of the defendant against whom the evidence is properly admitted influence[s] the way the jurors view the other defendant." *State v. Lawson*, 144 Ariz. 547, 555, 698 P.2d 1266, 1274 (1985). The test for severance based on rub-off is whether the jury can "keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict" as to each. *Id.* at 556, 698 P.2d at 1275 (quoting *United States v. Lippner*, 676 F.2d 456, 464–65 (11th Cir.1982)). For that reason, rub-off warrants severance only when the defendant seeking severance establishes a compelling danger of prejudice against which the trial court can not protect. *State v. Cruz*, 137 Ariz. 541, 544, 672 P.2d 470, 473 (1983). In considering whether the trial court erred in denying a motion to sever, we are mindful that the trial court exercises considerable discretion in determining whether, in light of the evidence then before the court, the defendant has made the requisite showing of prejudice. *See State v. Atwood*, 171 Ariz. 576, 612, 832 P.2d 593, 629 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). We will not overturn the trial court's decision absent a clear abuse of discretion. *State v. Comer*, 165 Ariz. 413, 418, 799 P.2d 333, 338 (1990), *cert. denied*, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 460 (1991).

## III.

■ We find no error in the trial court's denial of Van Winkle's pretrial motion to sever. Van Winkle presented limited argument in support of her initial motion, asserting primarily that C's testimony about Coffman's abuse might influence the jury to convict her by association. However, the mere introduction of evidence concerning one defendant's conduct that does not involve the other defendant generally does not constitute sufficient grounds for severance. *See State v. Poehnelt*, 150 Ariz. 136, 142, 722 P.2d 304, 310 (App.1985) (admission of one parent's previous abuse of child did not prejudice other parent in joint trial). Moreover, as the trial judge noted, certain aspects of C's proposed testimony, such as her statement that Van Winkle had called Coffman away from an incident of abuse occurring in C's bedroom, potentially benefitted Van Winkle. Because the trial court reasonably could have concluded, based upon the information then available, that C's testimony presented little risk of prejudice and that any juror confusion could be remedied through cross-examination, the court did not abuse its discretion in rejecting Van Winkle's initial motion for severance.

■ We reach a different conclusion with respect to the trial court's denial of Van Winkle's second motion for severance, made after opening statements and C's testimony. By that time, the danger that the state would improperly use evidence establishing Coffman's abuse to taint the jury's evaluation of Van Winkle should have been apparent.

In the opening statements, the state clearly signalled its intent to treat Coffman and Van Winkle as a unit, thereby reducing the likelihood that the jury could keep separate the evidence relevant to each. The prosecutor referred to the two defendants collectively, erroneously suggesting to the jury that Van Winkle had participated in all Coffman's abuse of the victims, although many incidents of abuse actually occurred before Coffman and Van Winkle met. The prosecutor asserted that "the defendants are not charged with every single sex act they committed. If they were, this trial would go on for months. Not only are *they* not charged with every sex act

that happened in Tucson, *they aren't charged at all with any of the acts that occurred in other states ....*" Because none of the evidence to be presented involved incidents between Van Winkle and any victim in another state, these statements improperly invited guilt by association. The prosecutor then urged the jury to hold both Coffman and Van Winkle "responsible for all the things *they* did to these children, *even though it happened eight years ago.*" Although Coffman's alleged abuse had extended for that period of time, no allegations involving Van Winkle went back that far. Finally, the prosecutor urged the jury to consider, *as substantive evidence of Van Winkle's guilt,* the similarities between the charges against her and Coffman. Referring to R's allegation that Van Winkle forced him to engage in sexual activity while Coffman watched, the prosecutor stated:

> The next time [Coffman] called R into that little room, he changed the scenario a little bit, added a new twist. This time Melinda Van Winkle, his girlfriend, participated. Now this was something new to R, to have this third person, but it wasn't anything new to Gary Coffman. He liked having sexual activity with more than one person. When the family lived in Kentucky, he liked to have C and B engage in sexual activity together while he watched and instructed them on what he wanted them to do.

The prosecutor then emphasized the similarities between R's description of the "orgy," which involved Van Winkle, and B's description of the "chain of love," which involved Kristine, stating that "Gary Coffman decided to alter the threesome scenario he was so fond of, and this time as participants he selected Kristine O'Brien and her 13 year-old son, B."

With the stage set for the jury to consider the abusive incidents as if committed jointly by the defendants, the state presented C's testimony. None of C's testimony was relevant in any respect to the charges against Van Winkle; C's testimony did not make any of the allegations against Van Winkle more or less probable. Ariz.R.Evid. 404(b). Moreover, all parties agree that C's testimo-

ny was extremely emotional. C sobbed throughout her testimony and paused often for tissues and sips of water.

The state's invitation to the jury that it regard the defendants as collectively responsible for the reprehensible actions of Coffman, coupled with the highly-charged testimony about his actions from C, established a compelling danger of prejudice and made severance necessary to promote a fair determination of Van Winkle's guilt or innocence. For that reason, we conclude that the trial court erred in failing to sever Van Winkle's trial.

**IV.**

■ Although the trial court erred in not severing Van Winkle's trial, we will not reverse her conviction if the failure to sever caused no prejudice. *See Cruz,* 137 Ariz. at 544, 672 P.2d at 473. The state argues, and the court of appeals agreed, that Van Winkle suffered no prejudice because (1) all the evidence complained of would have been admissible against Van Winkle in a separate trial to establish her motive or intent; (2) the court gave a proper limiting instruction; and (3) the jury did not consider evidence properly admitted only against Coffman in convicting Van Winkle. We disagree.

■ As the state asserts, severance is not required when the evidence on which a claim of rub-off relies would be admissible in a separate trial. *See State v. Runningeagle,* 176 Ariz. 59, 68, 859 P.2d 169, 178, *cert. denied,* 510 U.S. 1015, 114 S.Ct. 609, 126 L.Ed.2d 574 (1993). In this instance, however, we detect no basis for admitting much of the evidence of Coffman's actions in a separate trial of Van Winkle. Evidence of Coffman's prior abuse of the victims that occurred before he met Van Winkle, and evidence of his abuse of the victims that occurred during his relationship with Van Winkle, but in which Van Winkle did not participate, bears no relevance to Van Winkle's motive or intent in her own abuse of R. *See State v. Curiel,* 130 Ariz. 176, 184, 634 P.2d 988, 995 (App.1981) (husband's previous sale of heroin irrelevant to wife's intent in subsequent heroin sale). The fact that Van Winkle may have been aware of Coffman's

abusive actions does not establish that she committed the actions with which she was charged. We find no proper basis for admitting this evidence.

 The state argues alternatively that the trial court's instructions to the jury rendered harmless the court's error in failing to sever the trials. *See Runningeagle,* 176 Ariz. at 68, 859 P.2d at 178 (recognizing that limiting jury instructions may diminish rub-off sufficiently to cure the risk of prejudice in a joint trial).[1] The trial court instructed the jury:

> Each count as to each defendant charges a separate and distinct offense. You must decide each count as to each defendant separately on the evidence with the law applicable to it uninfluenced by your decision as to any other count. Your finding as to each count and each defendant must be stated in a separate verdict.

Although the instruction cautioned the jury to keep separate the evidence of each offense, it did not admonish the jury to keep separate the evidence applying to each defendant, uninfluenced by evidence pertaining to the other defendant. *See State v. Wiley,* 144 Ariz. 525, 532, 698 P.2d 1244, 1251 (1985) ("In order to prevent juror confusion, the trial court must instruct the jury to consider the evidence against each defendant separately."), *overruled on other grounds, State v. Superior Court,* 157 Ariz. 541, 544, 760 P.2d 541, 544 (1988), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1638, 113 L.Ed.2d 733 (1991).

Moreover, the trial court may have contributed to the risk the jury would misapply the evidence through language included in its subsequent instruction regarding prior bad acts:

> You have heard evidence of prior sexual contact between [the victims] and *either one or both of the defendants.* That evidence may be considered by you only as it tends to establish or not establish the intent or mental condition of the defendant

on the date charged in the indictment, and/or whether *he or she* had a sexual interest in children. Such evidence was not received and may not be considered by you to prove that *he or she* is of bad character or that *he or she* acted in conformity with such character.

Because the state presented no evidence of prior bad acts by Van Winkle, the instruction suggested erroneously that the jury could consider Coffman's prior abuse of the children to establish Van Winkle's intent. For those reasons, the court's instructions to the jury were inadequate to overcome the rub-off taint.

 The state argues finally that the trial court's failure to sever does not constitute reversible error because the jury kept separate the evidence against Coffman and Van Winkle. *See Lawson,* 144 Ariz. at 555, 698 P.2d at 1274. Although the state now argues that the jury could keep the evidence separate, at trial the prosecutor urged the jury to consider evidence related to Coffman as corroborating evidence related to Van Winkle. As discussed above, the state made repeated reference to collective guilt during opening statements. During closing arguments, the state also used evidence properly admissible only against Coffman to bolster R's credibility. The prosecutor pointed to B's and C's testimony that Coffman had forced them to have sex while he watched as corroboration for R's claim that Coffman had forced him to engage in sexual behavior with Van Winkle:

> [T]he fifth incident was different, because this time Melinda Van Winkle actively participated in what was going on.... [R's] father told him to take off his clothes, and he did that. And then his father told him to go do whatever Melinda Van Winkle told him to do. *So once again Gary Coffman was watching sexual activity between two other people, just as he had watched and instructed C and B on sexual activity*

---

1. Van Winkle asserts that, due to the complexity of the issues presented and the disparity in the weight of the evidence, no jury instruction could cure the court's error in conducting a joint trial. *See Runningeagle,* 176 Ariz. at 68, 859 P.2d at 178. However, although the case involved multiple counts, none of the individual counts presented issues of particular complexity. Moreover, the state's case against both defendants consisted primarily of victim testimony. Although the state presented more evidence of Coffman's conduct, the disparity in the weight of the evidence, considered alone, was not of such magnitude as to preclude an effective curative instruction.

*back in Kentucky. He had simply altered the players here.*

The prosecutor also urged the jury to consider the similarities as corroborating evidence of R's allegations:

> You also have corroborating evidence in terms of what the children told you happened to them. C and B both told you that their father made them engage in sexual acts together when they lived in Kentucky and that when he was making them do this, he was watching them and he was instructing them on what to do. That is exactly what Gary Coffman did with Melinda Van Winkle and R, had them engage in sexual contact together while he watched. It's awfully coincidental that R would be able to make up something like this, unless it had happened to him, that so reflected the same type of activity that C and B talked about in Kentucky.

The prosecutor then compared B's description of the "chain of love" to R's description of the "orgy," stating:

> Gary Coffman then did what we know to be another version of the chain of love, but R called it an orgy. *All Gary did this time was change the players.* He put his penis in R's anus at the same time that R had his penis in Melinda Van Winkle's vagina.

The prosecutor further pointed to the similarities in the testimony regarding the use of dildos:

> There was further corroboration in the children talking about the dildos that were used. C told you that she saw her father use a dildo on Melinda Van Winkle in Kentucky. She told you that she saw her brother B use a dildo on her father back in Kentucky. R told you that Melinda Van Winkle used a dildo on herself in the little room, and that on that very last visit he was forced to use a dildo on both of the defendants.

In its rebuttal, the state responded to attacks on R's credibility:

> [I]sn't it amazing the therapist could put into [R's] head the exact stuff that C and B talk about, the same types of crimes? How amazing that therapist must be, to

know what happened to the other two kids, so that he or she can put that thought in R's head.

Because R's testimony was not otherwise corroborated, the prosecution's inappropriate references to Coffman's conduct may well have influenced the weight the jury gave R's testimony, thereby contributing to Van Winkle's convictions. *Accord Cruz,* 137 Ariz. at 546, 672 P.2d at 475 (severance required because testimony that would have been inadmissible in a separate trial implicated defendant in previous similar crime).

The state argues that Van Winkle's acquittal on the single charge involving B proves that rub-off did not, in fact, influence the verdicts. Because the nature of the charge involving B differed substantially from the charges made by R, however, that acquittal provides little information about the jury's verdicts on the counts involving R. In light of the state's broad use of evidence that would have been inadmissible in a severed trial, we cannot conclude that rub-off did not influence the verdicts.

## V.

Due to the inflammatory nature of the evidence against Coffman and the state's misuse of the evidence, we conclude that severance was necessary to ensure a fair determination of Van Winkle's culpability. For that reason, we hold that the trial court erred in failing to sever Van Winkle's trial. Accordingly, we vacate the decision of the court of appeals and remand for a new trial.

FELDMAN, C.J., ZLAKET, V.C.J., and MOELLER, J., concur.

MARTONE, Justice, dissenting.

I disagree with the court for two separate and independent reasons.

1. The question of rub-off is highly fact intensive and involves an element of opinion. One must either know the record or look at it in exquisite detail to get a feel for just how much rub-off there was, or was not. I believe the trial court and the court of appeals are better equipped for such inquiries than we are. We are not organized to do such work, see Rule 31.19(c)(4), Ariz.R.Crim.P.,

and when we try, our opinion, distant as it is from that of the trial judge, and even the court of appeals, may be just as plausible as that of the trial judge, but no more correct. This case only involves the application of existing law to facts. The court addresses a fact-bound claim of error rejected by the trial court and the court of appeals. When a party argues only that a correct statement of the law was erroneously applied to the facts, review should be denied, except in the most extraordinary circumstances. *See* Rule 31.19(c)(4), Ariz.R.Crim.P.; *see also Kyles v. Whitley,* — U.S. —, —, 115 S.Ct. 1555, 1576, 131 L.Ed.2d 490 (1995) (Scalia, J., dissenting). This is not such a case. As Justice Jackson said so well:

> Whenever decisions of one court are reviewed by another, a percentage of them are reversed. That reflects a difference in outlook normally found between personnel comprising different courts. However, reversal by a higher court is not proof that justice is thereby better done.

*Kyles,* — U.S. at —, 115 S.Ct. at 1576 (quoting *Brown v. Allen,* 344 U.S. 443, 540, 73 S.Ct. 397, 427, 97 L.Ed. 469 (1953) (Jackson, J., concurring)).

2. Even if this were an appropriate case for our consideration, and even if, after plowing through the transcripts, one were to conclude that there was rub-off here, I am of the view that the trial court's instruction to the jury was adequate to deal with it. The court agrees that "the disparity and the weight of the evidence, considered alone, was not of such magnitude as to preclude an effective curative instruction." *Ante,* at 341 n. 1, 922 P.2d at 306 n. 1. Yet the court concludes that while the instruction cautioned the jury to keep separate each offense, it failed to instruct the jury to keep separate each defendant. *Id.* at 341, 922 P.2d at 306. But, as the instruction made clear, each count of the indictment not only alleged a separate offense, but one against a separate defendant. The instruction specifically informed the jury that "each count as to each defendant charges a separate and distinct offense. You must decide each count as to each defendant separately ... uninfluenced by your decision as to any other count." *Id.* Because each

count was addressed to only one defendant, the jury could not have considered each count separately without also considering each defendant separately.

Thus, if the court is correct that the rub-off here was such that a curative instruction would have worked, then it seems plain to me that this instruction in fact worked and thus error, if any, was harmless.

I therefore respectfully dissent.