NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

EMMANUEL LEONARD CASTILLO, *Appellant.*

No. 1 CA-CR 16-0866
FILED 3-1-2018

Appeal from the Superior Court in Maricopa County
No.  CR2013-003622-001
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

---

J O H N S E N, Judge:

¶1        Emmanuel Leonard Castillo challenges his convictions of kidnapping, unlawful flight, attempt to commit first-degree murder, conspiracy to commit murder, and two counts of aggravated assault. He argues the superior court erred by failing to sever his trial from that of his co-defendant, his brother Nazario Castillo. For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Castillo and his co-defendant encountered the victim when she was walking to her home in South Phoenix and offered to drive her there.[1] Rather than taking her home, however, they drove her to the co-defendant's apartment in Mesa and, once there, held her hostage at gunpoint. They repeatedly assaulted her – punching her several times, bludgeoning her in the back of the head with a sawed-off shotgun, stabbing her in the cheek and burning her with a knife blade heated on the stove. Castillo apparently knew the victim, and during the assault he repeatedly asked her, "Who set me up?" Castillo and his co-defendant then forced the victim into a car and drove her to a remote location along a canal, where the co-defendant shot her in the midsection with the shotgun. The victim survived and was able to describe to police the car Castillo and his co-defendant were driving.

¶3        Police later spotted the car, and the co-defendants led police on a high-speed chase, eventually abandoning the car and fleeing on foot in separate directions. Castillo surrendered peacefully soon thereafter; the co-defendant hid under a truck and shot and wounded two of the officers before being subdued.

---

[1]        We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all inferences against the defendant. *State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶4          A grand jury indicted Castillo and his co-defendant on charges of conspiracy to commit first-degree murder, a Class 1 dangerous felony; kidnapping, a Class 2 dangerous felony; two counts of aggravated assault, one a Class 3 dangerous felony and the other a Class 6 felony; and attempted first-degree murder, a Class 2 dangerous felony.  Castillo also was charged with unlawful flight from a law enforcement vehicle, a Class 5 felony; his co-defendant was charged with several additional counts of aggravated assault on police officers stemming from the shoot-out after the car chase.

¶5          Before trial, Castillo joined his co-defendant's motion to sever the counts involving the co-defendant's alleged assaults on police officers. The court denied the motion.  During trial, Castillo unsuccessfully moved on several occasions to sever his trial from that of his co-defendant.

¶6          After a 29-day trial, the jury found Castillo guilty of all charges.  On all of the convictions except unlawful flight, the court sentenced Castillo to concurrent sentences, the longest of which was life in prison with no possibility of release for 25 years.  On the flight conviction, the court imposed an additional consecutive six-year sentence.

¶7          Castillo timely appealed.  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018), 13-4031 (2018) and -4033(A)(1) (2018).[2]

## DISCUSSION

¶8          Castillo argues the superior court erred in denying the motions to sever.  We review a superior court's ruling on a motion to sever for abuse of discretion.  *State v. Grannis*, 183 Ariz. 52, 58 (1995) *disapproved of on other grounds by State v. King*, 225 Ariz. 87, 90, ¶ 12 (2010).  To prevail on appeal, the defendant "must demonstrate compelling prejudice against which the trial court was unable to protect."  *Id.* (quoting *State v. Cruz*, 137 Ariz. 541, 544 (1983)).

## A.      General Principles.

¶9          In general, separate charged offenses may be joined in an indictment if they "are of the same or similar character," "are based on the same conduct or are otherwise connected together in their commission," or

---

[2]      Absent material revision of a statute or rule of procedure after the date of an alleged offense, we cite the current version.

"are alleged to have been a part of a common scheme or plan." Ariz. R. Crim. P. 13.3(a). Defendants may be joined in an indictment "if each defendant is charged with each alleged offense, or if the alleged offenses are part of an alleged common conspiracy, scheme, or plan, or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others." Ariz. R. Crim. P. 13.3(b).

¶10 When offenses are joined on the basis that they "are of the same or similar character," Ariz. R. Crim. P. 13.3(a)(1), a defendant has a right to sever those offenses "unless evidence of the other offense or offenses would be admissible if the offenses were tried separately." Ariz. R. Crim. P. 13.4(b). Otherwise, a court must sever offenses or defendants only "if necessary to promote a fair determination of any defendant's guilt or innocence of any offense." Ariz. R. Crim. P. 13.4(a). "[A] trial court possesses broad discretion in the area of joinder and severance," *State v. Roper*, 140 Ariz. 459, 461 (App. 1984), and, in considering the issue, must balance the risk of prejudice to a defendant against the need for judicial economy, *Cruz*, 137 Ariz. at 544. Severance generally is required, however, when: (1) "evidence admitted against one defendant is facially incriminating to the other defendant"; (2) "evidence admitted against one defendant has a harmful 'rub-off effect' on the other defendant"; (3) "there is a significant disparity in the amount of evidence introduced against each of the two defendants"; or (4) "co-defendants present defenses that are so antagonistic that they are mutually exclusive, or the conduct of one defendant's defense harms the other defendant." *Grannis*, 183 Ariz. at 58 (citations omitted).

**B.    Waiver.**

¶11 Although Castillo moved before trial to sever his co-defendant's separate charges, he did not file a pretrial motion to sever his trial from the co-defendant's. The State argues that Castillo failed to timely move to sever his trial under Arizona Rule of Criminal Procedure 13.4(c) and thereby waived all but fundamental error with respect to the superior court's decision not to sever his trial.

¶12 Generally, "[a] defendant must move to sever at least 20 days before trial . . . ." Ariz. R. Crim. P. 13.4(c). A defendant may move for severance for the first time at trial, however, "[i]f a ground for severance previously unknown . . . arises during trial." Ariz. R. Crim. P. 13.4(c).

¶13 Here, when Castillo's counsel moved for severance at trial on the ground of inconsistent defenses, he indicated that he had not expected

the line of questioning that prompted his motion. Castillo's counsel suggested the defense also was surprised by the State's use of letters the co-defendant wrote. On this record, we decline to conclude that Castillo forfeited all but fundamental error review, and will review his claims of error for abuse of discretion.

## C. Inconsistent Defenses.

¶14 Castillo argues severance of his trial from that of his co-defendant was required because he and his co-defendant raised inconsistent defenses as to who actually shot the victim by the canal. As evidence of the inconsistent defenses, Castillo cites a question by his co-defendant's counsel to an officer: "Did you write that the person who shot the victim was Emmanuel Castillo?" Castillo argues that question, which was never answered, pointed the finger at him as the shooter.

¶15 Severance is required when co-defendants present defenses that are inconsistent with each other to the extent that "the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." *Cruz*, 137 Ariz. at 544-45. In *Cruz*, two people were killed and a third seriously wounded in a home-invasion robbery. *Id.* at 543. The defendant was tried for first-degree murder together with an associate whom he was accused of hiring to commit the act. *Id.* at 542-43. At trial, each of the two men denied any involvement in the killings. *Id.* at 545. The defendant attacked the prosecution's theory of his motive and the credibility of the key witness against him, and argued the killings were the result of a robbery by the co-defendant. *Id.* The co-defendant attacked the surviving victim's identification of him and the credibility of the prosecution's key witness. *Id.* The co-defendant also argued that the evidence showed robbery was not the motive for the crime and suggested instead that the killings were executions ordered by someone else, possibly the defendant. *Id.*

¶16 Even though the co-defendant in *Cruz* argued that the defendant was involved in ordering the killings, the supreme court held severance was not required. *Id.* The court reasoned that the cores of the co-defendants' separate defenses – each argued he was not involved in the killings – were not mutually exclusive. *Id.* In other words, the jury could have acquitted either of the two defendants without convicting the other. The court explained:

> It is natural that defendants accused of the same crime and
> tried together will attempt to escape conviction by pointing

the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant.

*Id.* at 544-45.

¶17 Here, unlike in *Cruz*, the co-defendant's core defense did not implicate the defendant. In fact, the co-defendant admitted at trial that he was holding the gun when the victim was shot. As the co-defendant explained it, the shooting was accidental and occurred because the victim grabbed for his gun and a struggle ensued. The co-defendant's counsel promoted this defense in closing, arguing that what the co-defendant "ha[d] said . . . all along" was that "there was a struggle with regards to this firearm. That it went off." If anything, the nature of the co-defendant's core defense – that the co-defendant shot the victim accidentally – supported Castillo's defense that he was not involved in the shooting.

¶18 "Even in a case where the nature of the defenses do not compel a severance," however, "a defendant may be prejudiced by the actual conduct of his or her co-defendant's defense." *Id.* at 545. The *Cruz* court reversed the conviction at issue there because the superior court had not adequately protected the defendant from highly prejudicial testimony elicited by the co-defendant that would not have been admissible if the defendant had been tried alone – including that the defendant was involved in organized crime and had ordered someone's legs broken on another occasion. *Id.* at 545-46. The supreme court found that the highly prejudicial nature of that testimony, combined with insufficient protective measures, deprived the defendant of a fair determination of his guilt or innocence. *Id.* at 546.

¶19 Here, in light of the co-defendant's admission that he and not Castillo was holding the gun when the victim was shot, any risk of

prejudice from the single unanswered question of which Castillo complains was minimal. Moreover, the superior court gave a limiting instruction that the jury should not consider the officer's testimony for any purpose other than to understand why the officer investigated. In this situation, the limiting instruction adequately protected Castillo from any concern that the question, in his counsel's words, "mudd[ied] the water" about the identity of the shooter.

## D. Rub-Off Effect.

¶20 Castillo additionally argues the superior court erred in failing to sever his trial from that of his co-defendant because the prejudicial effect of evidence admitted only against his co-defendant "rub[bed] off" on him. A defendant's motion to sever must be granted if he can show substantial prejudice from the "rub-off" effect of evidence when "the jury's unfavorable impression of [a co-defendant] against whom the evidence is properly admitted influence[s] the way the jurors view [the defendant]." *State v. Lawson*, 144 Ariz. 547, 555 (1985).

¶21 Castillo asserts the court erroneously denied his motion to sever after the State introduced several letters written by his co-defendant, including a letter addressed, "Hey little bro." Castillo claims that the letters would not have been admissible against him and impermissibly connected him, as his co-defendant's "little bro," to admissions the co-defendant made in the letters.

¶22 The record, however, shows that the letters themselves were not admitted as evidence. Instead, the State used the letters for impeachment during its cross-examination of the co-defendant, and Castillo fails to cite, and we cannot find, any reference to "little bro" during that cross-examination. Therefore, the asserted "rub-off" effect apparently never materialized. At any rate, the court gave an appropriate limiting instruction to the jury, directing it to consider the testimony about the letters only in assessing the co-defendant's credibility. For these reasons, the superior court did not err by denying Castillo's motion to sever based on the letters.

¶23 Castillo also argues the superior court erred in denying his motion to sever the several charges against his co-defendant based on the co-defendant's shoot-out with police. Castillo points out that he was not involved in the shoot-out and claims that evidence that his co-defendant fired at police officers unfairly rubbed off on him because the accounts of the shooting were "highly emotional."

¶24        "[M]ere introduction of evidence concerning one defendant's conduct that does not involve the other defendant generally does not constitute sufficient grounds for severance." *State v. Van Winkle*, 186 Ariz. 336, 339 (1996); *see also, e.g.*, *State v. Tucker*, 231 Ariz. 125, 142, ¶ 43 (App. 2012) (no abuse of discretion when State presented events of conspiracy committed by co-defendants that did not involve the defendant); *see generally* Ariz. R. Crim. P. 13.3(a) (allowing joinder when offenses are "connected together in their commission"). Severance is favored, however, when "it is difficult to segregate the evidence" against the co-defendants. *State v. Kinkade*, 140 Ariz. 91, 93 (1984) (quoting *McDaniel v. State*, 648 S.W.2d 57, 60 (Ark. 1983)). The issue is whether the jury can "keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him." *Lawson*, 144 Ariz. at 555-56 (quoting *United States v. Lippner*, 676 F.2d 456, 464-65 (11th Cir. 1982)).

¶25        Here, jurors would have had little difficulty segregating the evidence of Castillo's offenses from the separate offenses his co-defendant committed after Castillo surrendered. The co-defendant's assaults on the officers were separated from Castillo's crimes by a discrete event – the co-defendants' abandonment of their car and flight on foot in separate directions after the car chase ended. Undisputed testimony showed that after abandoning the car, Castillo was caught nearly immediately and surrendered peacefully.

¶26        On this record, Castillo has failed to show any particular danger of a "rub-off" effect caused by events at his trial. *Compare Van Winkle*, 186 Ariz. at 339-40 (compelling danger of prejudice established when prosecutor "invited guilt by association" by repeatedly referring to defendants collectively in talking about acts of sexual abuse charged only to co-defendant) with *Tucker*, 231 Ariz. at 142, ¶ 43 (jury could separate properly presented evidence against various defendants). Moreover, to protect against any risk of prejudice to Castillo, the court appropriately instructed the jury to "consider the charges against each defendant separately" and that each defendant was entitled to a verdict on each crime "based upon that defendant's own conduct and from the evidence which applies to that defendant as if the defendant were being tried alone." *See Tucker*, 231 Ariz. at 142, ¶ 43 (similar instruction "cured any potential prejudice due to rub-off" of properly presented evidence against co-defendants).

¶27        Nor was Castillo faced with a trial where "evidence against one defendant is so drastically disproportionate that the jury is unable to compartmentalize the evidence as it relates to separate defendants."

*Lawson*, 144 Ariz. at 556 (citing *United States v. Singer*, 732 F.2d 631, 635 (8th Cir. 1984)). While armed assaults on police officers are serious offenses that may stir emotions, the emotional effect of the evidence here of the co-defendant's separate crimes was not drastically disproportionate to the evidence against Castillo relating to the various horrific acts he committed against the victim.

¶28 For these reasons, the court did not abuse its discretion in denying Castillo's motion to sever the separate charges against his co-defendant.

## CONCLUSION

¶29 Because the superior court did not abuse its discretion in denying the motions to sever, we affirm Castillo's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA