NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

DWIGHT WILLIAM ELIA, *Appellant*.

No. 1 CA-CR 21-0249
FILED 5-17-2022

---

Appeal from the Superior Court in Yavapai County
No. P1300CR202000541
The Honorable John David Napper, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Celeste Kinney
*Counsel for Appellee*

Zickerman Law Office, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge Cynthia J. Bailey and Judge Peter B. Swann joined.

---

**W I L L I A M S**, Judge:

**¶1**        Dwight William Elia appeals his convictions and sentences for attempted first degree murder, aggravated assault, disorderly conduct, and misdemeanor criminal damage. Elia contends the trial court should have severed his trial from that of a codefendant. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        The State jointly tried Elia and codefendant Bruce Moore, as principals and accomplices, on charges of attempted first degree murder, three counts of aggravated assault, two counts of disorderly conduct, and one count each of discharging a firearm at a structure and criminal damage. The State presented evidence that Elia and Moore went to D.S. and W.S.'s home to find T.U. after having adverse encounters with T.U. earlier that day. Witnesses testified that Elia pointed a gun at D.S., Moore pointed a gun at W.S., and both Elia and Moore fired shots at T.U. while D.S. and W.S.'s two children stood nearby. Elia and Moore were caught a few days later, after separately going into hiding. Moore admitted to law enforcement he "lost control" and fired his weapon at T.U. Moore also told police he did not want Elia to approach T.U. with him, and he said nothing to suggest that Elia was carrying or fired a weapon during the incident. Moore did not testify at trial. Elia testified in his defense that he was present with Moore but did not carry, point, or shoot a gun at anyone and did not realize Moore had a gun until after shots were fired.

**¶3**        The trial court directed a verdict for both defendants on the count of discharging a firearm at a structure, and it removed the criminal damage count from the jury's consideration after determining the evidence was insufficient to establish a felony classification. The jury found both defendants guilty of the remaining charges, and the trial court subsequently found the defendants guilty of misdemeanor criminal damage. The court sentenced Elia to concurrent and consecutive prison terms totaling 49 years in the aggregate.

**¶4** Elia appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

**¶5** Elia argues the trial court erred by not severing his trial from Moore's. To preserve an appellate claim for severance, a defendant must "timely file and renew a proper motion for severance." Ariz. R. Crim. P. 13.4(c). If a ground for severance is known before trial, the defendant must file a pretrial motion to sever and renew a denied motion during trial. *Id.* "If a ground for severance previously unknown to a defendant arises during trial, the defendant must move for severance before or after the close of evidence." *Id.* Although there was some discussion of severance during the trial in this case, Elia appears to concede he did not adequately preserve a claim—which means he must establish that the trial court's failure to order severance was an error both fundamental and prejudicial.[1] *See State v. Crain*, 250 Ariz. 387, 393, ¶ 16 (App. 2021). He does not meet that burden.

**¶6** Two or more defendants may be jointly tried "if each defendant is charged with each alleged offense, or if the alleged offenses are part of an alleged common conspiracy, scheme, or plan, or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others." Ariz. R. Crim. P. 13.3(b). The trials of Elia and Moore were permissibly joined in the first instance because both defendants were charged with the same crimes. Although "joint trials are the rule rather than the exception," *State v. Murray*, 184 Ariz. 9, 25 (1995), a court must order a

---

[1] Before trial, Moore moved to preclude the admission of Elia's statements under *Bruton v. United States*, 391 U.S. 123 (1968), which held that admitting a statement of a nontestifying codefendant that inculpates the defendant in a joint trial violates the defendant's rights under the Confrontation Clause. Elia supported the motion but offered no separate argument. The trial court denied the motion. Although an incriminating statement under *Bruton* may provide grounds for severed trials, *see id.* at 131-32, neither Moore nor Elia moved for severance based on *Bruton* or otherwise before trial. Moore renewed his *Bruton* motion and requested severed trials after the parties previewed their theories of the case in opening statements. The trial court denied Moore's requests, and Elia turned down the court's offer to make a record. Moore again asked for severance, with Elia joining the request, after the court ruled it would permit evidence on whether T.U. identified Moore or Elia as a shooter to police. The court declined to order severance, and neither defendant raised the issue again.

severance "if necessary to promote a fair determination of any defendant's guilt or innocence of any offense," Arizona Rule of Criminal Procedure 13.4(a), including where "the court detects the presence or absence of unusual features of the crime or case that might prejudice the defendant," *State v. Cruz*, 137 Ariz. 541, 543 (1983).

¶7            Codefendants may have a right to separate trials if "evidence admitted against one defendant is facially incriminating to the other defendant"; "evidence admitted against one defendant has a harmful 'rub-off effect' on the other defendant"; "there is a significant disparity in the amount of evidence introduced against each of the two defendants"; "co-defendants present defenses that are so antagonistic that they are mutually exclusive"; or "the conduct of one defendant's defense harms the other defendant." *State v. Grannis*, 183 Ariz. 52, 58 (1995) (citations omitted), *disapproved of on other grounds by State v. King*, 225 Ariz. 87, 90, ¶ 12 (2010). Elia contends his trial should have been severed because he and Moore presented antagonistic defenses.[2] He also asserts that evidence offered against Moore was facially incriminating to him, had a harmful rub-off effect on him, and was significantly greater in amount than the evidence against him.

¶8            None of Elia's arguments withstand scrutiny. Antagonistic defenses only warrant severance "if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." *Cruz*, 137 Ariz. at 545. Here, the core of Moore's defense was that he was guilty of disorderly conduct but lacked the criminal intent required to establish the other charges. The core of Elia's defense was that he was an innocent bystander who did not know Moore had a gun until after the fact and who did not, himself, brandish or use a weapon. Moore and Elia's defenses were consistent, not mutually exclusive. Because the jury could have believed both, the defenses were not antagonistic enough to warrant severance. *Cf. State v. Kinkade*, 140 Ariz. 91, 94 (1984) (requiring separate trials where both defendants admitted to being present at the crime, but each accused the other of committing it).

¶9            Elia's other asserted bases for severance are unsupported by the record. A codefendant's statement is "facially incriminating" so as to warrant severance only if it "expressly" implicates the defendant. *See Richardson v. Marsh*, 481 U.S. 200, 208 (1987) (quoting *Bruton*, 391 U.S. at 124 n.1).

---

[2]     Elia also suggests his trial counsel provided ineffective assistance by failing to move for severance based on antagonistic defenses. Such a claim may only be raised in a proceeding for post-conviction relief, and we therefore do not address it. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002).

A statement that is "not incriminating on its face" but only becomes so "when linked with evidence introduced later at trial" is not "facially incriminating" for severance purposes. *See id.* Here, none of Moore's admitted statements expressly incriminated Elia. Indeed, Elia wanted Moore's statements to law enforcement to be admitted, and Elia relied on those statements to bolster his defense. Moore's admission to carrying and firing a weapon was not expressly inculpatory of Elia but only became so when linked to other evidence showing Elia's conduct as an accomplice.

**¶10**        Nor has Elia established that the amount or type of evidence offered against Moore unfairly influenced the jury's consideration of his own guilt. Even if Moore's confession made for a stronger case against him than against Elia, "there was also substantial evidence of [Elia's] guilt." *See State v. Runningeagle*, 176 Ariz. 59, 68 (1993). Multiple witnesses described seeing Elia pointing and shooting a gun, and Elia's conduct after the incident—hiding from police and asking others to help him flee the state—showed consciousness of guilt. Furthermore, because the State alleged accomplice liability, much of the evidence against Moore would have been admissible in a separate trial against Elia. *See id.*; *State v. Via*, 146 Ariz. 108, 115 (1985) (finding no prejudice from court's refusal to sever charges where evidence as to one set of charges would have been admissible at separate trial on other charges).

**¶11**        Elia also fails to show that evidence offered against Moore risked making an "unfavorable impression" that might "spill-over" or "rub-off" onto the jury's view of Elia. *See State v. Lawson*, 144 Ariz. 547, 555 (1985). Elia points to no specific inflammatory or otherwise unflattering evidence offered against Moore that might have tainted jurors' view of Elia by association. *Cf. State v. Van Winkle*, 186 Ariz. 336, 340 (1996) (severance warranted where prosecutor invited jurors to hold defendant responsible for "reprehensible actions of [codefendant], coupled with highly charged testimony about [codefendant's] actions from [a victim]," that were irrelevant to the charges against defendant). "[T]he mere introduction of evidence concerning one defendant's conduct that does not involve the other defendant generally does not constitute sufficient grounds for severance." *Id.* at 339. And in fact, some of the evidence admitted against Moore cast him in a sympathetic light—showing him to be an elderly man with health problems who spoke well of the victims, regretted his conduct, and had hoped police would kill him when they found him.

**¶12**        Even assuming the existence of significant disparate or rub-off evidence, severance is only warranted on those grounds if the jury is unable to "compartmentalize" and separately apply "the evidence that is relevant to

each defendant." *Grannis*, 183 Ariz. at 59 (internal quotation marks and citations omitted). "Because a severance in the middle of a trial is a severe remedy, it should be resorted to only if prejudice flowing from a joint trial is beyond the curative powers of a cautionary instruction." *Lawson*, 144 Ariz. at 555. Here, jurors were instructed to consider the charges and evidence against each defendant separately, and the record discloses no reason to doubt jurors' compliance with those instructions. *See Murray*, 184 Ariz. at 25 ("With such an instruction, the jury is presumed to have considered the evidence against each defendant separately in finding both guilty."). "The issues confronting the jury were relatively simple, and the disparity in the weight of evidence against the defendants was not great enough to deny [Elia] a fair trial." *See Runningeagle*, 176 Ariz. at 68.

## CONCLUSION

¶13        We affirm Elia's convictions and resulting sentences.